In re Lawrence F. SMITH d/b/a, T.W. Enterprises, Dollye D. Smith, Tim W. Weathers, Angela D. Weathers, Debtors.

Cumberland Surety Insurance Co., Inc., The Mountbatten Surety Co., Plaintiffs,

v.

Lawrence F. Smith d/b/a, T.W. Enterprises, Dollye D. Smith, Tim W. Weathers, Angela D. Weathers, Defendants.

Bankruptcy Nos. 97–35283(2)7, 97–35780(2)7.
Adversary Nos. 98–3083, 98–3084, 98–3003.

United States Bankruptcy Court, W.D. Kentucky, Louisville Division.

July 3, 1999.

FED.R.BANKR.P. 7052 which is made applicable to Contested Matters by FED. R.BANKR.P. 9014. This Memorandum will be published.

Wallace H. Spalding, III, Louisville, KY, for debtor.

Kyle Cooper, Louisville, KY, trustee.

Susan I. Hellerman, Cumberland Surety Ins. Co., Inc., Lexington, KY, for plaintiff.

Steven A. Snow, Louisville, KY, for defendant.

David M. Cantor, Louisvilly, KY, Dwight Cosby, Radcliff, KY.

### MEMORANDUM OPINION

J. WENDELL ROBERTS, Bankruptcy Judge.

The two Plaintiffs, Cumberland Surety Insurance Co., Inc. ("Cumberland"), and Mountbatten Insurance Co., Inc. ("Mountbatten"), are both insurance companies that issued surety bonds for T.W. Enterprises, a construction company solely owned by the Debtor husbands in this bankruptcy action. The Plaintiffs were called upon to make payments to materialmen, suppliers and laborers under the surety bonds at issue. All four Debtors in this case, Lawrence and Dollye Smith ("the Smiths"), and Tim and Angela Weathers ("the Weathers"), personally guaranteed T.W. Enterprises' obligations with regard to those bonds. Upon the Debtors' filing for bankruptcy, the Plaintiff Insurance Companies filed the above-captioned adversary proceedings to have their claims against the Debtors determined to be nondischargeable under § 523(a)(4) of the Bankruptcy Code. Those adversary proceedings have been consolidated, as they involve precisely the same issues.

The matter is presently before the Court on the Plaintiff Insurance Companies' separate Motions for Summary Judgment, and the Smiths' and the Weathers' Cross–Motions for Summary Judgment. Having fully reviewed the briefs filed by both parties, the case law cited therein,

and the entire file, as well as having conducted its own independent research, the Court finds that the material facts are not in dispute and the two Plaintiff Insurance Companies are entitled by law to a judgment against Mr. Smith and Mr. Weathers. They are not, however, entitled to a judgment against the Debtor wives. Mrs. Smith has moved for Summary Judgment, asking to be dismissed from this case, and the Court finds that she is entitled by law to such relief. Mrs. Weathers, however, has failed to likewise move the Court for Summary Judgment on her individual behalf. Nevertheless, finding that the Plaintiffs are simply not legally entitled to a judgment against Mrs. Weathers any more than they are entitled to a judgment against Mrs. Smith, the Court will likewise enter Summary Judgment on behalf of Mrs. Weathers.

In summation, the Plaintiffs' Motions for Summary Judgment will be sustained in-part, as they relate to Mr. Smith and Mr. Weathers, and will be overruled in-part, as they pertain to Mrs. Smith and Mrs. Weathers. The Smiths' Cross–Motion for Summary Judgment will be sustained in-part as it relates to Mrs. Smith, and will be otherwise overruled. Finally, the Weathers' Cross–Motion for Summary Judgment will be sustained in-part as it relates to Mrs. Weathers, and will be otherwise overruled.

### FACTS

Debtor Lawrence Smith and Debtor Tim Weathers owned and operated T.W. Enterprises, a contract construction business. Mr. Smith and Mr. Weathers were the sole shareholders of that business, with Mr. Weathers possessing a 55% ownership interest and Mr. Smith possessing the remaining 45% ownership interest. Mr. Weathers served as President of the Corporation, while Mr. Smith served as Secretary, Treasurer and legal counsel.

Neither of the Debtor wives were shareholders, officers, or directors of the Corporation. Nor is there any evidence in the record that they were employed by the Corporation or in any manner involved in its day-to-day business operations. Their involvement in this case arises from their joining with their husbands to personally guarantee T.W. Enterprise's obligations owed to the Plaintiff Insurance Companies on General Indemnity Agreements; such agreements having been executed in connection with the Plaintiffs' issuance of surety bonds for T.W. Enterprises on construction projects.

T.W. Enterprises was awarded construction contracts, as general contractor, on a number of government construction projects. As is customarily required of general contractors, T.W. Enterprises obtained surety bonds [1] for the various government construction projects it was awarded. Cumberland provided the surety bond for T.W. Enterprises on some of those projects, and Mountbatten provided the bonding on other projects. In both cases, Mr. Smith and Mr. Weathers, the two owners and officers of the Corporation, along with their wives, signed General Indemnity Agreements with the insurance company providing the bonding. Pursuant to these General Indemnity Agreements, all four Debtors obligated themselves personally to indemnify the respective insurance companies in the event the insurance company providing the bonding was called upon to make payments pursuant thereto.

T.W. Enterprises commenced work on the various construction projects, sub-contracting with materialmen, laborers and suppliers. T.W. Enterprises received funds from the government at the outset of these projects to fund the commencement of the projects, and received progress payments at various points in the construction process, as the work progressed.

Both Mr. Smith and Mr. Weathers testified at their respective depositions that they failed to segregate the funds received from the various projects. Instead, they

---

1. These bonds have also been referred to as payment and performance bonds.

placed the funds in the Company's general operating account. In addition to co-mingling the project funds with the general operating funds, the Company also failed to keep separate books and records for each project. As a result of these lax accounting methods, the Company regularly used funds paid from one project to pay laborers, materialmen and suppliers of other projects. Mr. Smith, himself, has described this practice as "robbing Peter to pay Paul." (Smith Depo. at 29–30). Mr. Smith was aware that this was a legally untenable practice, and has testified that he warned Mr. Weathers as to this fact. (Smith Depo. at 30–31, 63). Nevertheless, the practice continued from 1992 until at least sometime in 1997.

T.W. Enterprise's financial situation steadily deteriorated. As a result, the funds flowing into the Company were insufficient to cover all payments owed to subcontractors on the different projects. By May of 1996, the Company had a serious cash shortfall in the amount of approximately $200,000.00. Recognizing the seriousness of the cash shortfall, Mr. Smith called a meeting with the two Debtor wives to inform them of the problem. Nevertheless, the mounting financial problems continued, as well as the Company's wrongful practice of co-mingling funds and failing to use project funds to pay the sub-contractors for their labor, materials and supplies on the respective projects. For instance, in August of 1996, T.W. Enterprises was paid $126,051.61 with respect to work performed on a specific government project at Crane Naval Base, located at Crane, Indiana. Instead of using the funds to pay the laborers and materialmen owed for work and materials supplied with respect to that project, Mr. Weathers, with Mr. Smith's knowledge, deposited the funds into an account used by Mr. Weathers in his real estate dealings, from which he then paid a debt owed to the IRS for unpaid taxes.

By early 1997, both Cumberland and Mountbatten began receiving claims from the unpaid laborers, materialmen and suppliers to whom payment was owed. Mountbatten ultimately was required to pay $23,741.35 to subcontractors, and Cumberland ultimately paid $98,284.67. Both insurance companies made demands for reimbursement against the Debtors. Despite those demands, the Debtors failed to indemnify Cumberland and Mountbatten.

On February 12, 1997, T.W. Enterprises filed for Chapter 11 bankruptcy. Thereafter, Cumberland aggressively pursued indemnification from the Smiths and Weathers, personally, and filed a lawsuit in State Court against them on May 16, 1997. Thereafter, on September 19, 1997, Cumberland obtained a Summary Judgment in the amount of $52,000.00 against each of the two couples, personally. Following entry of that Judgment, the Weathers and the Smiths both filed for Chapter 7 bankruptcy on October 10, 1997 and November 5, 1997, respectively.

During approximately this same time frame, T.W. Enterprise's Chapter 11 case was dismissed on July 22, 1997. Consequently, Cumberland filed a lawsuit in State Court against the Company, as well, and obtained a Default Judgment a year later, in July of 1998.

The Plaintiff Insurance Companies each filed adversary proceedings in the Debtors' Chapter 7 bankruptcy actions, seeking to have their respective, claims declared non-dischargeable under § 523(a)(4). As these proceedings involve the same Debtors, material facts and issues, they have been consolidated for this Court's consideration.

### LEGAL DISCUSSION

██ The Court begins its analysis with a review of § 523(a)(4). That Section reads:

A discharge under Section 727 ... of this title does not discharge an individual debtor from any debt—

(4) For fraud or defalcation while acting in a fiduciary capacity ...

"Defalcation," as used in the context of § 523(a)(4), "refers to a failure to produce funds entrusted to a fiduciary and applies to conduct which does not necessarily reach the level of 'fraud,' or 'embezzlement,' or 'misappropriation.'" *In re Sigler,* 196 B.R. 762, 764 (Bankr.W.D.Ky.1996) (*quoting* 3 Collier's on Bankruptcy ¶ 523.14[1][6] at 523–111 (15th Ed.1995)); *In re Garver,* 116 F.3d 176, 178–80 (6th Cir.1997); *Quaif v. Johnson,* 4 F.3d 950 (11th Cir.1993); *Holmes v. Kraus,* 37 B.R. 126 (Bankr.E.D.Mich.1984). Defalcation is an extremely broad term. It includes deficits which result from the breach of a fiduciary duty, even if the breach was neither intentional nor committed in bad faith. *In re Johnson,* 691 F.2d 249, 251, 254–57 (6th Cir.1982); *Sigler,* 196 B.R. at 764. Thus, while the term includes embezzlement and misappropriations, it also includes unintentional failures to properly account for funds entrusted to a fiduciary. *Garver,* 116 F.3d at 179–80; *In re Interstate Agency,* 760 F.2d 121, 125 (6th Cir. 1985).

■ To come within the scope of § 523(a)(4), however, the defalcation must have occurred while the debtor was "acting in a fiduciary capacity." *Garver,* 116 F.3d at 178–80; *Johnson,* 691 F.2d at 251; *Sigler,* 196 B.R. at 764; *Accord Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). In fact, the Sixth Circuit has expressly held that the term "defalcation" as used in § 523(a)(4) "necessarily implies the existence of an express or technical trust relationship." *Garver,* 116 F.3d at 179; *Accord Sigler,* 196 B.R. at 764; *Johnson,* 691 F.2d at 251. The term does not, however, extend to "implied" trusts. *Johnson,* 691 F.2d at 251; *Sigler,* 196 B.R. at 764.

■ Accordingly, as defined by the Sixth Circuit, "the defalcation provision of § 523(a)(4) is limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Garver,* 116 F.3d at 180. Defalcation

occurs when the debtor either misappropriates those funds or simply fails to properly account for them. *Id.*

■ Thus, the Plaintiffs must establish the following factors: (1) the existence of a trust, either express or statutorily created; (2) the debtor owed a fiduciary obligation with relation to that trust; and (3) the debtor breached his or her fiduciary duty by either misappropriating the trust res or by simply failing, intentionally or unintentionally, to properly account for the trust res. The Court finds that the Plaintiffs have succeeded in establishing all three factors with respect to Mr. Smith and Mr. Weathers.

### A. *EXISTENCE OF A TRUST*

■ In determining whether an express or technical trust exists, the Court must look to the relevant state law. *Johnson,* 691 F.2d at 251; *Runnion v. Pedrazzini,* 644 F.2d 756 (9th Cir.1981); *Angelle v. Reed,* 610 F.2d 1335 (5th Cir.1980); *Sigler,* 196 B.R. at 764.

The Mountbatten Indemnity Agreement at issue, which all four Debtors in this case signed, contains a choice of law provision. It states that the Agreement "shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania ... "

The Cumberland Indemnity Agreement signed by the four Debtors, on the other hand, is governed by the law of Kentucky.

■ The Court has reviewed the law governing the creation of express trusts from both states, Pennsylvania and Kentucky, and finds that it is basically the same. *In re Clayton,* 198 B.R. 878 (Bankr. E.D.Pa.1996); *In re Kulzer Roofing, Inc.,* 139 B.R. 132, 139–40 (Bankr.E.D.Pa.1992); *Frazier v. Hudson,* 279 Ky. 334, 130 S.W.2d 809, 810 (1939). Under the laws of both states, the four requisite elements of an express trust are: (1) an express intent to create a trust; (2) an ascertainable res; (3) a sufficiently certain beneficiary; and

(4) a trustee who owns and administers the res for the benefit of another (the beneficiary). *Clayton,* 198 B.R. at 878; *Kulzer Roofing,* 139 B.R. at 139–40; *Frazier,* 130 S.W.2d at 810 (*citing* Restatement of the Law of Trusts, Volume I, p. 73 § 23) ("the manifestation of an intent on the part of the alleged donor or trustee to create it in favor of the alleged beneficiary in and to the particular property involved" and "the settler manifests an intention to impose enforceable duties.").

■ This Court has reviewed the pertinent provisions of both the Mountbatten Indemnity Agreement and the Cumberland Indemnity Agreement, and finds that both Agreements create an express trust imposing fiduciary duties upon the Debtors. While the exact language of the relevant provisions of the two Agreements vary somewhat, they are substantively identical. The Mountbatten Agreement provides:

> Where any Bond is executed in connection with a contract, the Contractor and the Indemnitors covenant and agree *to hold all money or other proceeds of such contract,* whether received as payment or as loans, *as a trust for the benefit of laborers, materialmen, suppliers, subcontractors and the Surety* and to use such money or other proceeds for the purpose of performing the contract and discharging the obligation of the Bond beneficiaries, and for no other purpose, until the Bond and the Surety's losses, costs, expenses and attorney's fees are completely discharged.

(Mountbatten General Indemnity Agreement, Para. 9) (emphasis added).

Substantively likewise, the Cumberland General Agreement of Indemnity reads in pertinent part:

> ... further, it is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the bonds *are trust funds* whether in the possession of the Indemnitor or Indemnitors or otherwise *for the benefit of and for payment of all*

*such obligations in connection with any such contract or contracts* for which the surety would be liable under any of said bonds, which said *trust also ensures (sic) to the benefit of the surety for any liability* or loss it may have to sustain under said bonds, and this agreement and declaration shall also constitute notice of such trust.

(Cumberland General Agreement of Indemnity, Para. 9) (emphasis added).

The Court finds that both the Mountbatten General Indemnity Agreement and the Cumberland General Agreement of Indemnity create an express trust. Paragraph 9 of both Insurance Companies' Agreements clearly contain the four requisite elements for the creation of such a trust.

### 1. EXPRESS INTENT TO CREATE A TRUST.

With regard to the first element, the Court finds that the language of both Agreements unequivocally expresses the intent to create a trust. The Mountbatten Agreement states that the indemnitors (i.e., the Debtors) are "to hold all monies or other proceeds of [bonded construction contracts] ... *as a trust ...* " (Para.9). The Cumberland Agreement states that "all monies due and to become due under any contract or contracts covered by the bonds *are trust funds ...* " (Para.9). Thus, both Agreements clearly meet the first requirement.

### 2. ASCERTAINABLE RES.

The Court finds that the second requirement is met, as well. That is, both Agreements meet the requirement of having an ascertainable res. Pursuant to the express language of paragraph 9 of both the Mountbatten and the Cumberland General Indemnity Agreements, the res was designated as all monies or proceeds paid to the general contractor, T.W. Enterprises, on construction contracts for which the Plaintiff Insurance Companies issued surety bonds.

The Debtors have complained, however, that the requirement of an ascertainable res has not been met because the contract funds were not already paid to T.W. Enterprises at the time the General Indemnity Agreements were executed. Thus, the Debtors argue, there was no transfer of a "present beneficial interest" in ascertainable property. The Court is not persuaded by this argument.

The language of the two respective provisions set forth above clearly identifies the property to be held in trust—i.e., the monies paid to T.W. Enterprises pursuant to the construction contracts for which the Plaintiffs issued surety bonds. The Sixth Circuit case of *Federal Insurance Company v. Fifth Third Bank*, 867 F.2d 330 (6th Cir.1989), likewise involved the question of whether a substantively identical provision in a general indemnity agreement created an express trust. While that case was decided under Ohio law, the Court notes that the requirements for creating a trust are again substantively the same as required in Kentucky and in Pennsylvania. Like this case, the agreement was executed in connection with the plaintiff insurance company's issuance of a surety bond on a construction project. *Id.* The provision at issue in that case stated that "[a]ll monies paid on account to any contractor for materials or labor shall be regarded as fund [sic] in trust for payment of any and all obligations relating to this contract...." *Id.* at 332. The Sixth Circuit held that this language created an express trust, with the progress payments made to the contractor being designated as the trust res. *Id.* at 334. The Court found that the provision clearly designated the trust res, despite the fact that the payments were not actually made to the contractor until a point in time subsequent to the execution of the agreement. *Id.*

In accordance with the Sixth Circuit's construction of that substantively identical provision, this Court finds that the provisions at issue in this case likewise designate a clearly ascertainable res.

Moreover, the Court additionally notes that even if a trust is not immediately created due to its subject matter not being definite or definitely ascertainable, the trust may still subsequently arise when its subject matter does become definite or definitely ascertainable. *Restatement 2d of Trusts*, § 26. What is required is the continued existence of the other three requirements at the time the trust property does become ascertainable. *Id. See also ALI Restatement of the Law*, 2d § 86; and Bogert *Trust & Trustees*, 2d Ed.Rev.Ch. 7 § 112, p. 319. In this case, the Debtors were operating under the Agreements and clearly accepting the benefits thereof at the time the payments began to be made pursuant to their construction projects. The Debtors signed the Indemnity Agreements in consideration of the Plaintiffs' issuance of the surety bonds. This consideration along with the Debtors' continued use of the bonds was sufficient to create a continuing obligation to abide by the trust. Thus, even if the Court were to give credence to the Debtors' argument that there was not a present beneficial interest in a definite res at the time the Agreements were executed, it would still be compelled to find that the trusts subsequently arose when the payments referenced thereby came into actual existence.

### 3. *A SUFFICIENTLY CERTAIN BENEFICIARY.*

The Debtors assert that there are no sufficiently certain beneficiaries designated by either Indemnity Agreement because they are both simply established for the benefit of the laborers, materialmen, suppliers, and subcontractors. The Debtors argue that these general terms do not comply with the requirement. Rather, they argue, the beneficiaries must be specifically identified. The Court notes that the Debtors fail to cite any authority in support of this argument.

Again, the Court finds that the Sixth Circuit construed the substantively identical provision in the *Federal Insurance*

*Company* case as designating sufficiently certain beneficiaries. *Federal Insurance Co.*, 867 F.2d at 334. The Sixth Circuit held that the provision sufficiently designated the "job creditors" as being the beneficiaries. *Id.* This Court likewise finds that the provisions at issue sufficiently designate the beneficiaries.

Nevertheless, the Court does not even need to reach a finding with regard to the question of whether a sufficiently certain beneficiary is designated by the utilization of terms such as "laborers, materialmen, suppliers and subcontractors," because in this case both provisions additionally designate "the Surety" as a beneficiary. There simply can be no dispute as to whom that term in the respective provisions was intended to apply. That designation alone establishes a sufficiently certain beneficiary.

### 4. *A DESIGNATED TRUSTEE.*

Lastly, the Court notes that paragraph 9 of the Indemnity Agreements at issue clearly designate the indemnitors (i.e., the Debtors) as the trustees. Both provisions impose the duty of holding the designated funds on the indemnitors. Accordingly, they are the designated trustees. *See Federal Insurance Co.*, 867 F.2d at 334 (adopting the same construction with regard to the substantively identical provision involved in that case).

### B. *THE TRUST ACCOUNT PROVISION WAS NOT A CQNDITION PRECEDENT TO THE CREATION OF THE TRUST.*

█ The Mountbatten Indemnity Agreement includes a provision granting the Surety the right to require the General Contractor, T.W. Enterprises, to establish a trust account for the deposit of the monies to be held in trust. The provision reads:

> The Contractor will, upon demand of the Surety *and in implementation of the trust or trusts hereby created,* establish a trust account or accounts with a bank

or similar depository designated by the Surety and approved by the Contractor, for the deposit therein of all monies received from the contract referenced in the Bond. (emphasis added)

The Debtors argue that even if the Indemnity Agreement did in fact provide for the creation of a trust, the above trust account provision established a condition precedent to the creation of such a trust.

The Court is not persuaded. The language of this provision simply does not create a condition precedent. This provision merely grants the Surety *the option* of requiring that a trust account be formed.

The express trust, itself, was absolutely and automatically created by separate language in the Agreement, without any contingencies or conditions stated. The existence of the trust was not in any way affected or undermined by the Surety's decision not to exercise its option of requiring a trust account.

Moreover, the Court notes that the Sixth Circuit has held that a trust agreement's failure to expressly require that trust funds be held in a separate account is "not a determining factor of whether a trust was formed." *Federal Insurance Company*, 867 F.2d at 334. The requirement that trust funds be held in a separate account is a basic fiduciary obligation automatically owed by the trustee. *Id.* (*citing* Restatement 2d of Trusts § 179 (1959)). "When a trust is formed, the trustee has this obligation regardless of the trust agreement wording." *Id.*

### C. *DEFALCATION.*

█ Having established that both the Mountbatten and the Cumberland General Indemnity Agreements created express trusts and that the Debtors owed fiduciary obligations pursuant to both trusts, the Court must answer the final inquiry of whether a defalcation occurred in that context. As defined above, "defalcation" requires the Court to find that the Debtors

either intentionally or unintentionally failed to properly account for the funds entrusted to them. It is clear from the undisputed facts that Mr. Weathers and Mr. Smith, as the sole shareholders, officers, and directors of T.W. Enterprises, failed to hold the funds received from construction projects in accordance with the relevant express trusts. Mr. Smith and Mr. Weathers have given deposition testimony that they did not segregate the funds received from the various projects, as they understood was required of them. Instead, they placed the funds in the Company's general operating account, co-mingling the project funds with the general operating funds. They used project funds received on one project to pay suppliers and subcontractors on other projects, as well as to pay the Company's general operating expenses. As noted above, there is testimony that project funds were even used to pay an IRS debt.

Mr. Smith described these practices as "robbing Peter to pay Paul," and states that he knew the Company was engaging in improper fund-keeping and payment practices. Mr. Smith additionally advised Mr. Weathers of this fact on several occasions.

Ultimately, the Company experienced serious cash flow problems and was unable to make payments to materialmen, laborers, suppliers and subcontractors on projects for which the company had received progress payments. The Debtors have conceded that they failed to hold the funds for the benefit of those entities. This, without question, constitutes a textbook example of defalcation on the part of Mr. Smith and Mr. Weathers.

The wives, however, are a different case. It is undisputed that neither wife had any ownership interest nor were they involved in the operations of the Company. They were not officers, directors, shareholders or employees. There is no evidence in the record as to any involvement in the business on their respective parts, except for signing the Indemnification Agreements and participating in one meeting called by Mr. Smith in May of 1996, for the purpose of advising them as to the serious $200,000.00 cash shortfall the Company was experiencing. From the evidence in the record, it appears clear that neither wife had access to or control over the funds. Thus, the Court finds it would have been impossible for either of them to have engaged in a "defalcation" with regard to those funds.

In sum, the Court finds that Mr. Smith and Mr. Weathers engaged in a defalcation while acting in a fiduciary capacity; thus, the obligations they owe to Mountbatten and Cumberland are nondischargeable pursuant to § 523(a)(4). Mrs. Smith and Mrs. Weathers have not, however, engaged in a defalcation as they had no control over or access to the funds that are the subject of this dispute.

### D. CUMBERLAND IS NOT ESTOPPED FROM ALLEGING DEFALCATION.

Finally, the Smiths argue that Cumberland is precluded from alleging claims of embezzlement and defalcation against the Debtors pursuant to the doctrine of res judicata. The Smiths assert that Cumberland did not assert those claims in the State Court indemnity action and now is barred from doing so.

The Full Faith and Credit Statute, 28 U.S.C. § 1738, requires Federal Courts to give full faith and credit to judicial proceedings of any State Court. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274, *reh'g denied*, 471 U.S. 1062, 105 S.Ct. 2127, 85 L.Ed.2d 491 (1985); *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262, *reh'g denied*, 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1405 (1982). The Full Faith and Credit Statute directs that:

> the judicial proceedings of any court of any ... State ... shall have the same full faith and credit in every court within

the United States ... as they have by law or usage in the Courts of such State ... from which they are taken.

28 U.S.C. § 1738 (1994).

█ Accordingly, the Federal Courts are directed to give a State Court judgment "the same preclusive effect as would be given that judgment under the law of the State in which judgment was rendered." *George v. United Kentucky Bank, Inc.*, 753 F.2d 50, 52 (6th Cir.), *cert. denied*, 471 U.S. 1018, 105 S.Ct. 2024, 85 L.Ed.2d 306 and 474 U.S. 821, 106 S.Ct. 70, 88 L.Ed.2d 58 (1985); *Marrese*, 470 U.S. at 380, 385, 105 S.Ct. 1327; *Migra v. Warren City School District Board of Ed.*, 465 U.S. 75, 80–81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Thus, in accordance with these directives, the Bankruptcy Court is required at the outset to consider the law of the State in which a judgment was rendered to determine the preclusive effect to be accorded that judgement. *Marrese*, 470 U.S. at 375, 105 S.Ct. 1327; *Kremer*, 456 U.S. at 481–82, 102 S.Ct. 1883.

█ Kentucky, like the other states, recognizes the doctrine of res judicata. *George*, 753 F.2d at 53; *Newman v. Newman*, 451 S.W.2d 417, 419 (Ky.1970); *Vaughn's Adm'r v. Louisville & N.R. Co.*, 297 Ky. 309, 179 S.W.2d 441, 444 (1944); *Napier v. Jones*, 925 S.W.2d 193, 195–96 (Ky.App.1996). Under this doctrine:

[A] final judgment rendered upon the merits ... by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.

*BTC Leasing, Inc. v. Martin*, 685 S.W.2d 191, 197 (Ky.App.1984); *See also Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Thus, to invoke the doctrine, three elements must be demonstrated: (1) an identity of the parties; (2) an identity of the two causes of action; and (3) the first action was decided on its merits. *George*, 753 F.2d at 53; *Newman*, 451 S.W.2d at 419; *Napier*, 925 S.W.2d at 195; *BTC Leasing*, 685 S.W.2d at 197.

█ In this case, there is an identity of parties. There is not, however, a complete identity of the causes of action. The Court has determined that Mr. Smith and Mr. Weathers engaged in a defalcation while acting in a fiduciary capacity. Having made that determination, it is not necessary for the Court to address the embezzlement claim. The defalcation claim goes far beyond the scope of Cumberland's earlier State Court Action, which was pure and simply a debt collection action based on its Indemnity Agreement with the Debtors.

Upon the Debtors' filing of their bankruptcy actions, completely different concerns and issues arose. Once the bankruptcies were filed, nondischargeability under § 523(a) of the Bankruptcy Code became an issue for the first time. Nondischargeability under § 523(a)(4) involves elements that go far beyond the scope of a simple debt collection/indemnity action.

Accordingly, Cumberland is not barred under the doctrine of res judicata from pursuing its nondischargeability action under § 523(a)(4), and alleging defalcation in that context.

## CONCLUSION

For the above-stated reasons, the Court finds that there are no material facts in dispute and the two Plaintiff Insurance Companies are entitled by law to a judgment against Mr. Weathers and Mr. Smith. They are not, however, entitled to a judgment against the two Debtor wives. Rather, Mrs. Smith and Mrs. Weathers are entitled by law to judgments in their behalfs.

Accordingly, the Court will sustain the Plaintiffs' Motions for Summary Judgment in-part, as they relate to Mr. Smith and Mr. Weathers, and will overrule the Motions in-part, as they relate to Mrs. Smith

and Mrs. Weathers. The Smiths' Cross–Motion for Summary Judgment will be sustained in-part as it relates to Mrs. Smith, and will be otherwise overruled. Finally, the Weathers' Cross–Motion for Summary Judgment will likewise be sustained in-part as it relates to Mrs. Weathers, and will be otherwise overruled.