**In re Stanley Marshall ELLISON and Kay Dearing Ellison, Debtors.**

**Airlines Reporting Corporation, Plaintiff,**

v.

**Stanley Marshall Ellison and Kay Dearing Ellison, Defendants.**

**Bankruptcy No. 94–50123.**
**Adversary No. 94–0096.**

United States Bankruptcy Court,
S.D. West Virginia.

Dec. 2, 1999.

---

540

Becket & Watkins, Malvern, PA, Ellen S. Cappellanti, Julia A. Chincheck, Charles I. Jones, Jr., Johnathan Nicol, R. Terrance Rodgers, King, Betts & Allen, Charleston, WV, Fred A. Jesser, III, Fayetteville, WV, J. Grant McGuire, Huntington, WV, James D. Meadows, Atlanta, GA, Paul W. Roop, II, Beckley, WV, for creditors.

Colleen C. McCulloch, William R. Wooton, Beckley, WV, for debtors.

Hamilton, Mooney, Burgess, Young & Tissue, Oak Hill, WV, Lynn B. Pollard, Fayetteville, WV, for trustee.

### ORDER GRANTING IN PART PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT; AND SETTING FOR HEARING THE AMOUNT OF JUDGMENT AND ATTORNEY FEES

RONALD G. PEARSON, Bankruptcy Judge.

This matter comes before the Court upon a Renewed Motion for Summary Judgment filed by Airlines Reporting Corporation (hereinafter "ARC") on October 4, 1999, and a Motion to Dismiss and/or for

Summary Judgment filed by the defendants on October 5, 1999. Defendants responded to ARC's motion on October 19, 1999, and ARC responded to defendants' motion on October 18, 1999. ARC also replied to defendants' response to ARC's motion on October 29, 1999. A pre-trial settlement conference was conducted by this Court on November 18, 1999 in Beckley, West Virginia, whereupon the Court was informed that no settlement was forthcoming. The Court then informed the parties that a decision would be made with respect to the pending motions by December 1, 1999, and that the parties would be informed about the status of the trial currently set for December 6 & 7, 1999 in Charleston, West Virginia. The Court rules as follows on these issues.

### FACTUAL BACKGROUND

This adversary proceeding was filed by ARC on July 15, 1994, alleging that debts owed ARC by the defendants were nondischargeable pursuant to § 523(a)(2)(A), (a)(4) or (a)(6) of the Bankruptcy Code. The debts in question arise out of two Agent Reporting Agreements ("ARA's") between ARC and Sovereign World Travel, Ltd. ("SWT") entered into the parties in December, 1984 ("Initial ARA") and August 19, 1993 ("New ARA"). SWT later changed its name to Great American Holding Company, but will be referred to throughout this opinion as SWT. Defendants Kay and Stanley Ellison were both officers and directors of SWT at all times relevant hereto.

ARC serves as a national clearinghouse company which issues Traffic Documents to travel agencies on behalf of major airline carriers (hereinafter "Carriers"), and has authorization to collect payment from travel agencies on behalf of the Carriers for amounts due on tickets sold. Pursuant to the ARA's, SWT was authorized to issue "Traffic Documents" for airline ticket sales to customers on behalf of ARC. The ARA's established an express trust relationship between SWT and ARC and the Carriers. Some of the pertinent provisions of the ARA are as follows:

> All ARC [T]raffic [D]ocuments supplied to [SWT] shall be held in trust for [ARC] until issued to [SWT's] clients to cover transportation or ancillary services purchased, or until otherwise satisfactorily accounted for to [ARC] or the [Carrier], and shall be surrendered upon demand, together with all airline identification plates, to [ARC] pursuant to this agreement.

*1993 ARA,* Section XII.D.

> [SWT] shall designate a bank account for the benefit of [ARC] and the [C]arrier for deposit of (1) the proceeds of the sales of air transportation and ancillary services for which ARC [T]raffic [D]ocuments were issued, and (2) such funds as may be required to pay any other amount which [ARC] is authorized to draft from the account. [SWT] recognizes that the proceeds of the sales, less [SWT's] commissions, on these ARC [T]raffic [D]ocuments are the property of the [C]arrier and shall be held in trust until accounted for to the [C]arrier.

*1993 ARA,* Section VII.B.

> All monies and credit card billing documents, less applicable commissions, collected by [SWT] for sales hereunder are property of the [C]arriers, and shall be held in trust by [SWT] until satisfactorily accounted for to the [C]arriers.

*1993 ARA,* Section VIII.A.5.

Furthermore, Section VII.G of the New ARA required SWT to follow all procedures in the Industry Agents' Handbook. "Section 14.0 of the Handbook places an affirmative duty upon SWT to collect for sales of all traffic documents. More spe-

cifically, Section 14.0 provides, in pertinent part, as follows:

> An agent is required, pursuant to [S]ection [VIII] of the [1993 ARA] to remit on a weekly basis for the sales made on behalf of its principals. This remitting obligation is not excused by the agent's inability or failure to collect its accounts receivable. Consequently, every agent must tailor its credit policies in such a way that they will not interfere with the agent's duty to make full and prompt remittance."

*See Plaintiff's Reply to Defendants' Opposition to Renewed Motion for Summary Judgment*, p. 7.

The ARA's additionally required SWT to submit weekly sales reports to ARC containing information relating to all Traffic Documents issued by the travel agency within the previous week. ARC used these weekly sales reports to determine the total amount to withdraw from SWT's bank account to pay the Carriers. ARC was authorized to make drafts against SWT's bank account number 01–1173–9 at the Whitesville Bank for this purpose. It is undisputed that SWT failed to provide ARC with weekly sales reports for the dates of December 5, 1993; December 12, 1993; December 19, 1993; December 26, 1993; January 2, 1994 and January 9, 1994. *See Memo in Support of Defendants' Motion to Dismiss and/or for Summary Judgment* at 5. SWT's successor-in-name, Great American, filed bankruptcy on January 28, 1994, which also prompted the defendants' bankruptcy filing.

SWT also executed a "Cushion Agreement" with ARC on July 27, 1993, whereby SWT agreed to keep a cushion of $100,000.00 in the Whitesville bank account, and further agreed that only ARC would be authorized to withdraw funds from this account. The account was to be used as a trust account for the Carriers,

and not in the daily operations of SWT. *See Plaintiff's Renewed Motion for Summary Judgment* at 4–5.

ARC alleges that SWT failed to file certain sales reports (as has been admitted), filed false sales reports, under-reporting weekly sales (which has been denied, and no evidence filed with this Court), caused certain checks to be dishonored and converted trust funds to the extent of $412,962.17 total loss to ARC. The defendants' potential liability on these charges arises out of certain guarantee agreements signed by them, individually, and out of their positions as officers and directors of SWT. Both defendants executed a "Agreement Personal Guarantee of Performance of Agent's Agreement" on August 3, 1992 accepting responsibility for any obligations arising out of the ARA's between ARC and SWT in order to for ARC to continue SWT's inclusion on the agency list, except to the extent that such obligations might be covered by the proceeds of SWT's surety bond and letter of credit. Subsequent personal guarantees were signed by the defendants on June 24, 1993 with similar provisions. Additionally, defendants have both admitted to being officers in charge of daily operations of SWT whose responsibilities included preparation of weekly sales reports and supervision of the ARA's with ARC and the trust account at Whitesville State Bank.

On January 8, 1998, this Court denied a previous motion for summary judgment filed by ARC, stating that two genuine issues of material fact existed which precluded summary judgment. The two questions the Court raised were "whether the bank account designated for ARC to draw checks upon was also used for operations of Sovereign World Travel and whether Airlines Reporting Corporation had the authority to collect from SWT on behalf of Aeromexico." *See January 8, 1998 Order*

at 2. The Court finds that the recent pleadings filed by the parties and affidavits attached thereto sufficiently establishes that ARC has the authority to collect from travel agencies for tickets sold on behalf of Aeromexico. While the question of whether SWT also used the Whitesville bank account for daily operations has not been sufficiently answered by the defendants, this Court finds that this does not constitute a material fact which would preclude summary judgment. Therefore, the Court rules as follows on the motions.

### *PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IS GRANTED IN PART AND DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT IS DENIED*

Bankruptcy Rule 7056 incorporates the standards sets forth in Federal Rule of Civil Procedure 56, which governs when summary judgment is appropriate. That rule provides, in pertinent part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

■■■ The moving party has the initial burden of proving that no genuine issue of fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *United States v. Lambert,* 915 F.Supp. 797 (S.D.W.Va.1996). The burden then shifts to the nonmoving party to demonstrate that a triable issue of fact exists which precludes summary judgment against the nonmovant. *Holland v. Double G. Coal Co.,* 898 F.Supp. 351 (S.D.W.Va.1995).

■■■ For a genuine issue of fact to exist, there must be sufficient evidence that a reasonable jury could find, by a preponderance of the evidence, for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–248, 106 S.Ct. 2505. "Only disputes over facts that might affect the outcome of the suit ... will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

■■■ In this case ARC has provided this Court with well-documented and well-argued pleadings, along with affidavits and other exhibits in support of summary judgment. The defendants have not provided this Court with any evidence to rebut the facts as set forth by ARC. Defendants cite no law or facts relevant to the allegations contained in ARC's motion, but merely make conclusory statements that no fraud has been proven and that ARC has not documented the amount of its claim. In cases such as this where the only remaining issue is a question of law, summary judgment is appropriate. *See Southern Elec. Supply Co. v. Raleigh County National Bank,* 173 W.Va. 780, 320 S.E.2d 515 (1984).

ARC argues for summary judgment on various grounds, including fraud, false pretenses or false representations under § 523(a)(2)(A), fraud or defalcation while acting in a fiduciary capacity under § 523(a)(4), and willful and malicious conversion of plaintiff's property under § 523(a)(6) of the Bankruptcy Code. This Court determines that ARC has provided

some evidence with regards to each of these charges, but as ARC has not shown that SWT actually failed to deposit monies received into the trust account at Whitesville State Bank or that SWT actually withdrew monies from that account for use in daily operations, the Court decides the issue based upon § 523(a)(4), which denies discharge "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).

This Court has seen no evidence that SWT submitted other false reports which under-reported sales. Therefore, there is no evidence that the defendants committed actual fraud. This Court has, however, reviewed documents in the file demonstrating that various sales were made by SWT during the agency agreement period which were not reported to ARC, and photocopies of various checks which were dishonored have been submitted as exhibits for trial which is persuasive evidence that defendants committed a defalcation. The fiduciary relationship between ARC and SWT is clearly set out in the ARA's, and the defendants' liability for those obligations is equally clear from the two personal guarantees executed by each of them individually, and the fact that the defendants have both admitted responsibility for handling the weekly sales reports and the trust account at Whitesville State Bank.

▮▮▮ "The definition of fiduciary under § 523(a)(4) is determined by both federal and state law. State law may be consulted to determine whether a fiduciary relationship exists. Federal law, however, which narrowly defines 'fiduciary,' requires that the relationship have arisen prior to and independent of the 'fraud or defalcation ... [and] must be based upon an express or technical trust.'" *American Honda Finance Corp. v. Francis,* 1993 WL 208236 (W.D.Va.1993). In this case there was clearly an express trust agreement (the ARA's) entered into between ARC and the defendants, acting on behalf of SWT which arose several years prior to the defalcations. In addition to the personal guarantees signed by the defendants, as corporate officers they also occupied a fiduciary relationship with SWT's creditors. *Id.* at 3 (citations omitted). "Officers of [a] company are, in a sense, trustees of [the company's] earnings for the benefit of the different claims of creditors." *Id.* (quoting *Addison v. Lewis,* 75 Va. 701, 711–12 (1881)). Therefore, this Court finds that a fiduciary relationship did exist between the defendants and SWT sufficient to make the provisions of § 523(a)(4) applicable to them.

Defalcation refers to a failure to produce funds entrusted to a fiduciary and applies to conduct that does not necessary reach the level of fraud, embezzlement or misappropriation. Since debts arising from breaches of ordinary care are normally dischargeable in bankruptcy, and exceptions to discharge are strictly construed in favor of the debtor, some degree of culpability is required to make a debt nondischargeable as a defalcation under section 523(a)(4). However, when a debtor has been acting as a trustee or other fiduciary, the debtor is responsible for knowledge of the fiduciary responsibilities and may not cite mere ignorance as a defense to an objection to dischargeability asserted under section 523(a)(4).

4 *Collier on Bankruptcy,* ¶ 523.10 (15th Ed.) (citations omitted).

▮▮▮ One recent decision has held that "failure to account means that 'trust property is missing,' or that the fiduciary 'failed to pay it over as he ought,' not merely that expenses were not well documented." *Zohlman v. Zoldan,* 226 B.R. 767, 777 (Fn. 8) (citation omitted). The evidence has clearly established that SWT

was under a duty to submit weekly sales reports to ARC under the ARA's and failed to do so for a period of at least six weeks. However, this is not mere failure to document expenses, it is a failure to account for the Traffic Documents issued which SWT held in trust for ARC. It is also obvious to this Court that SWT and the defendants breached their fiduciary duty to ARC by failing to maintain sufficient account balances in the trust account for payment to the Carriers for tickets sold. The ARA specifically provided that such funds must be deposited as soon as Traffic Documents were issued, less commission of SWT, regardless of SWT's collection of accounts receivable from customers. Obviously SWT did not fulfill this bargain for some time, and even failed to submit records so that sales and deficiencies could be tracked.

It appears quite clear to this Court that had SWT deposited funds in the trust account sufficient to cover all Traffic Documents issued, then ARC would not have suffered any losses. Defendants' unsupported allegations that Whitesville State Bank offset a loan to Great American on December 9, 1993, causing certain drafts of ARC to be dishonored is contradictory and irrelevant. First of all, the offset defendants claim the Bank took was in the amount of approximately $50,000.00. ARC claims there were over $100,000.00 in dishonored checks. Further, even if such an offset were relevant, it would not alter the fact that SWT did not make sufficient deposits to cover the Traffic Documents issued as required by the ARA, and therefore breached its fiduciary duty to ARC and the Carriers.

The defendants had both a fiduciary duty to ARC in the execution of the ARA's which created an express trust relationship with respect to the Traffic Documents and the trust account at the Whitesville State Bank, and a fiduciary duty to SWT as officers and directors to ensure that SWT complied with the terms of the ARA's so as not to lose its agency listing. Defendants were instrumental in the actions which constituted the defalcation, and thus must be held personally liable for their breach of fiduciary duty. To survive summary judgment, the defendants should have produced some significant probative evidence tending to refute ARC's evidence, and their conclusory arguments unsupported by factual statements or evidence did not meet that burden. *See Lewis v. Scott,* 97 F.3d 1182 (9th Cir.1996).

Therefore, based upon the pleadings submitted by ARC in support of summary judgment and in preparation for trial of this matter, and based upon the law as set forth above, and due to the defendants' utter failure to provide any evidence which contradicts the conclusion that they were fiduciaries who committed a defalcation of duty by failing to properly administer trust assets, it is accordingly,

**ORDERED** that the plaintiff's motion for summary judgment is hereby **GRANTED,** and the debts arising out of ARC's relationship with SWT are nondischargeable debts to defendants under § 523(a)(4) due to defendants' defalcation while acting in a fiduciary capacity. It is further,

**ORDERED** that defendants' motion to dismiss and/or for summary judgment is hereby **DENIED** as having no basis in law or fact. It is further,

**ORDERED** that a hearing will be held on December 6, 1999 at 10:00 a.m. in Bankruptcy Courtroom A, Charleston, West Virginia to determine the amount of the nondischargeable judgment to be awarded ARC. The parties are instructed to bring whatever witnesses and exhibits

may be necessary to prove or rebut the amount of this obligation.

**IT IS SO ORDERED.**