**In re Lee WRIGHT and Hurmer Wright.**

**Lee Wright and Hurmer Wright, Plaintiffs,**

**v.**

**Gulf Insurance Co., Defendant.**

**Bankruptcy No. 99–45391S.**
**Adversary No. 00–4090.**

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

July 17, 2001.

Jesse Thompson, Conway, AR, for debtors.

Junius Bracy Cross, Little Rock, AR, for defendant.

Richard Ramsay, Little Rock, AR, Chapter 13 Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY DAVIES SCOTT, Bankruptcy Judge.

In 1991, Lee and Hurmer Wright began operating a contracting business, H.L. Wright Contractors, Inc. In 1995, H.L. Wright Contractors obtained three separate construction jobs and, as required

under those contracts, obtained payment and performance bonds for the contracts from Gulf Insurance Company. The indemnity agreement signed by both Lee and Hurmer Wright, provided as follows:

> If any of the Bonds are executed in connection with a contract which by its terms or by law prohibits the assignment of the contract price, or any part thereof indemnitor and Indemnitors coverant and agree that all payments received for or on account of said contract shall be held as a trust fund in which the Surety has an interest, for the payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the prosecution of the work provided in said contract or any authorized extension or modification thereof; and, further, *it is expressly understood and declared that all monies due and to be come due under any contract or contracts covered by the Bonds are trust funds*, whether in the possession of the Indemnitor or Indemnitors or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said bonds which said trust also insures to the benefit of the Surety for any liability or loss it may have to sustain under any said Bonds and this Agreement and declaration shall also constitute notice of such trust.

(Emphasis added.) The debtors substantially underbid one of the projects, however, and were unable to pay all of their laborers and subcontractors for the work they performed on any of the jobs. Ultimately, Gulf Insurance was obligated to pay $132,794.96 on the bonds.

In 1999, the debtors filed a chapter 7 petition in bankruptcy, but failed to list Gulf Insurance on their schedules as a creditor. Unaware of either the chapter 7 case or, ultimately, the debtors' discharge, Gulf Insurance proceeded with its collection of the obligations owed to it, including the obligation of the debtors based upon their indemnity agreement. Realizing that they had failed to list Gulf Insurances a creditor, the debtors reopened their bankruptcy case and filed this adversary proceeding, seeking a determination that the obligation to Gulf Insurance had been discharged. Gulf Insurance asserts that the obligation is nondischargeable pursuant to sections 523(a)(3) and (a)(4) in as much as the debtors failed to list the debt and, in any event, committed a defalcation while acting in a fiduciary capacity.

Pursuant to section 523(a)(3), a debtor is not discharged from any debt neither listed nor scheduled in time for the creditor to timely file a proof of claim and file a determination of dischargeability of debt. In this manner, if the debtor fails to schedule a debt and the creditor does not learn of the bankruptcy case in sufficient time to protect its rights, the creditors debt will not be discharged unless further proceedings are held. Specifically, a debtor may seek to reopen the case and obtain a determination of dischargeability of the obligation. In this manner, the creditor, whose due process rights are protected through service of a summons and complaint, is afforded the opportunity to assert grounds it may have for the nondischargeability of the debt. *See generally In re Hauge*, 232 B.R. 141 (Bankr.D.Minn.1999).

This preservation of rights and alteration in the procedure and timing of the litigation, however, does not affect the substantive litigation and the burdens of proof afforded the parties. *Cf. Raleigh v. Illinois Department of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000)(The burden of proof is a substantive aspect of the claim and one who asserts a

claim is entitled to the burden of proof that normally comes with it). Thus, while the debtor bears the initial burden under section 523(a)(3), the creditor must bear the burden of demonstrating the merits of any response it brings raising issues under paragraphs (2), (4), or (6) of section 523. *See generally Waugh v. Eldridge (In re Waugh)*, 172 B.R. 31, 34 (Bankr.E.D.Ark. 1994), *rev'd on other grounds*, 198 B.R. 545 (E.D.Ark.1995), *aff'd*, 95 F.3d 706 (8th Cir. 1996). Gulf Insurance thus bears the burden of proof in demonstrating the elements of section 523(a)(4).

■ There is no dispute that the debtors failed to schedule Gulf Insurance as a creditor and that they failed to provide any notice to it of the chapter 7 case. Moreover, there is no indication that Gulf Insurance had actual knowledge of the bankruptcy case. Thus, Gulf Insurance is entitled to raise an objection to the dischargeability of its debt despite the strictures of Rule 4007 which require that all such complaints be filed within sixty days of the date first set for the section 341(a) meeting.

■■ Section 523(a)(4) provides that a debtor is not discharged from a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." A defalcation is defined as "the misappropriation of trust funds or money held in any fiduciary capacity [or the] failure to properly account for such funds." *Tudor Oaks Limited Partnership v. Cochrane (In re Cochrane)*, 124 F.3d 978, 983 (8th Cir. 1997), *cert. denied*, 522 U.S. 1112, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998). In this instance Gulf Insurance asserts that the debtors should not be discharged under their indemnity obligation because they committed a defalcation while acting in a fiduciary capacity. In this proceeding, Gulf Insurance must therefore demonstrate that (1) an express or statutory trust exists; (2) the debtors owed a fiduciary obligation regarding that trust; and (3) that the debtors breached their fiduciary duty by misappropriating the trust *res* or by failing to properly account for the trust *res*. *Cumberland Surety Insurance Company v. Smith (In re Smith)*, 238 B.R. 664 (Bankr.W.D.Ky.1999).

■ Gulf Insurance has demonstrated the existence of an express trust contained in a clause in the indemnity agreement, signed by the debtors because it imposes the obligation upon the debtors to hold the funds in trust and that all funds due under the contracts are trust funds, identifies the *res* as the funds being paid pursuant to the construction contracts, and designates the materialmen and laborers as the beneficiaries. *Smith*, 238 B.R. at 671–72. *See Gillespi v. Jenkins (In re Jenkins)*, 110 B.R. 74, 76 (Bankr.M.D.Fla. 1990).

Second, although the debtors' testimony was somewhat confused, the only conclusion that may reached from their testimony is that they used the contract funds for purposes other than payment of the laborers and materialmen. It does not appear that the debtors segregated the funds for each of the projects, nor even kept sufficient records to determine what payments were made on what projects. Further, it was admitted that the funds from the three ongoing projects were the only source of income being received by the debtors during this time. Although at times inconsistently denying that they paid any bills other than those to the materialman or for taxes and labor, they also indicated that they purchased groceries and made their home mortgage payments. Since they had no other funds, the court concludes that the debtors, in fact, utilized the contractfunds for purposes other than designated pursuant to the agreements. Thus, the debtors failed to hold the funds

for the benefit of the materialmen and subcontractors, "a textbook example of defalcation" on the part of the debtors. *See In re Smith*, 238 B.R. 664. *Accord Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 253–55 (6th Cir. 1982); *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1187 (9th Cir.1996).

There is no requirement that the debtors have any form of fraudulent or malicious intent in committing the defalcation for the debt to be nondischargeable. *Tudor Oaks Limited Partnership v. Cochrane (In re Cochrane)*, 124 F.3d 978, 983 (8th Cir.1997), *cert. denied*, 522 U.S. 1112, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998); *Johnson*, 691 F.2d at 255–56 ("An objective standard for finding a defalcation, that does charge a bankrupt with knowledge of the law and that does not weigh intent or motive, is consistent with the policy behind the bankruptcy laws of giving an honest debtor the opportunity for economic rehabilitation...creating a debt by breaching a fiduciary duty is a sufficiently bad act to invoke the [Bankruptcy Act] section 17(a)(4) exception even with a subjective mental state evidencing an intent to breach a known fiduciary duty or bad faith in doing so. This is because the requisite badness...is supplied by an individual's special legal status with respect to another, with its attendant duties and high standards of dealing, and the act of breaching these duties."); *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1186–87 (9th Cir.1996) Rather, although something more than mere negligence or an innocent mistake is required, ignorance of the fiduciary responsibilities is not an excuse to defalcation if that ignorance leads to a fiduciary default. *Id.; Old Republic Surety Co. v. Richardson (In re Richardson)*, 178 B.R. 19, 27–29 (Bankr.D.D.C.), *aff'd*, 193 B.R. 378 (D.D.C.1995), *aff'd*, 107 F.3d 923 (D.C.Cir.), *cert. denied*, 522 U.S. 851, 118 S.Ct. 143, 139 L.Ed.2d 90 (1997).

The debtors undertook fiduciary obligations when they signed the indemnity agreement and, thus, were required to hold the funds they received on their bonded contracts in trust for the subcontractors, laborers and materialmen with whom they contracted. When they received the funds, however, they paid some of their contract obligations, but also paid other debts, including personal expenses. In so doing they committed a defalcation. It is irrelevant that the debtors had no intent to deprive the subcontractors of their due, or that the funds were not expended on luxury items. It is sufficient that the express trust obligation was imposed upon them and that they breached that trust by spending the funds outside of the trust responsibilities. Accordingly, the obligation under the indemnity agreement to Gulf Insurance is nondischargeable pursuant to section 523(a)(4).

**ORDERED** that a separate judgment shall be entered in favor of the defendant Golf Insurance Company excepting the obligation owed to it by the debtors from dischargeability, pursuant to 11 U.S.C. § 523(a)(4)

**IT IS SO ORDERED.**