**In re David Patrick HERNDON, Debtor.**

**International Fidelity Insurance Company, Plaintiff,**

v.

**David Patrick Herndon, Defendant.**

**Bankruptcy No. 01–40158M. Adversary No. 01–4082.**

United States Bankruptcy Court, E.D. Arkansas, Western Division.

May 16, 2002.

Keith L. Grayson, Grayson & Grayson, P.A., North Little Rock, AR, for debtor.

Jack East, III, Attorney at Law, Little Rock, AR, for plaintiff.

Eichenbaum Law Firm, Little Rock, AR, for Richard L. Ramsay, trustee.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On January 10, 2001, David Patrick Herndon ("Debtor") filed a voluntary petition for relief under the provisions of chapter 13 of the United States Bankruptcy Code. On May 1, 2001, the Debtor converted the case to chapter 7. On December 7, 2001, the Trustee filed a report of no distribution.

On July 16, 2001, International Fidelity Insurance Company ("International") filed a complaint to determine the dischargeability of its debt of $50,091.61 on the grounds that the debt was the result of a defalcation by a fiduciary in violation of 11 U.S.C. § 523(a)(4). Trial on the merits was held on November 2, 2001, in Little Rock, Arkansas, and the matter was taken under advisement.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I)(1994), and the Court has jurisdiction to enter a final judgment in this case. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## FACTS

The facts are not in dispute. The Debtor was president of IBECX, L.L.C. ("IBECX"), a limited liability company.[1] IBECX was a construction company that dealt with installation of underground pipes and utilities. IBECX ceased its business activities in February 2000. Prior to that time, the Debtor was responsible for "office work" which included duties

concerning accounts payable and accounts receivable.

IBECX maintained two bank accounts, a general account and a payroll account. Receivables from construction contracts were all deposited into the general account. IBECX did not segregate funds received from the various projects which were underway at the same time, and all IBECX's bills were paid from the general account.

In 2000, IBECX was awarded a contract to perform work on a water line relocation known as the Fairplay Road Project in Saline County, Arkansas. The contract price was for a total of $123,984.00. As part of the contract documents, the Debtor individually executed an indemnity agreement in favor of International, which wrote a performance and payment bond on the project.

A term in the indemnity agreement entitled "Trust Fund" stated the following:

it is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the Contractor or Indemnitors or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said Bonds, which said trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any said Bonds, and this Agreement and declaration shall also constitute notice of such trust.

(Pl.'s Ex. 1.) The indemnity agreement names IBECX as the contractor, the Debtor as an indemnitor, and International as the surety.

---

1. There is no evidence in the record which establishes who the members of IBECX were.

As part of the project, IBECX purchased water pipe on credit from Hughes Supply, Inc. ("Hughes") for a price of $50,000.00. The pipe was delivered to the job site in June 2000. In August 2000, IBECX applied for and received a draw of $55,131.61 on the contract from Southwest Water Users Association, the owner. Approximately $50,000.00 of the draw was for the pipe purchased from Hughes. However, shortly thereafter, work on the project was halted because the water association had failed to acquire the necessary right-of-ways. A mile of pipe had been laid when the project ceased.

IBECX did not use the $55,000.00 payment to pay Hughes Supply for the pipe for the Fairplay Road Project. The money was deposited by the Debtor into IBECX's general fund, and IBECX ultimately used the money in connection with a project in Mountain Home, Arkansas. Hughes made a claim against the bond and was paid by International, which now brings this action.

## DISCUSSION

■ The United States Bankruptcy Code excepts from discharge "debts which are for ... defalcation while acting in a fiduciary capacity...." 11 U.S.C. § 523(a)(4) (1994). A defalcation under this code section is the misappropriation of funds held by a fiduciary and includes the innocent default of a fiduciary who fails to account fully for money received. *Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane),* 124 F.3d 978, 984 (8th Cir.1997)(quoting *Lewis v. Scott,* 97 F.3d 1182, 1186 (9th Cir.1996)); *Antlers Roof-Truss & Builders Supply v. Storie (In re Storie),* 216 B.R. 283, 286 (10th Cir. BAP 1997) (citations omitted); *Cumberland Sur. Ins. Co. v. Smith (In re Smith),* 238 B.R. 664, 670 (Bankr.W.D.Ky.1999) (citing *In re Johnson,* 691 F.2d 249, 251, 254–57

(6th Cir.1982); *In re Sigler,* 196 B.R. 762, 764 (Bankr.W.D.Ky.1996)).

■ The Code reference to "fiduciary capacity" applies in the strict and narrow sense as arising either from duties reposed in a trustee though an express trust or through a statute or other state rule creating fiduciary status cognizable in bankruptcy. *Barclay's Am./Bus. Credit, Inc. v. Long (In re Long),* 774 F.2d 875, 878 (8th Cir.1985) (citing *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934)); *Global Express Money Orders, Inc. v. Davis (In re Davis),* 262 B.R. 673, 682 (Bankr.E.D.Va.2001); *Airlines Reporting Corp. v. Ellison (In re Ellison),* 265 B.R. 539, 545 (Bankr. S.D.W.Va.1999) (quoting *American Honda Fin. Corp. v. Francis,* 1993 WL 208236 (W.D.Va.1993)).

■ To except from discharge a debt for defalcation, the complainant must prove that either an express or statutorily created trust exists, that the debtor owed a fiduciary duty arising from that trust, and that the debtor breached that duty through a defalcation. *In re Storie,* 216 B.R. at 286; *Global Express,* 262 B.R. at 682 (citing *Bellity v. Wolfington (In re Wolfington),* 48 B.R. 920, 923 (Bankr. E.D.Pa.1985) (citing *Aetna Ins. Co. v. Byrd (In re Byrd),* 15 B.R. 154, 155 (Bankr.E.D.Va.1981))); *In re Smith,* 238 B.R. at 670; *Gillespi v. Jenkins (In re Jenkins),* 110 B.R. 74, 76 (Bankr.M.D.Fla. 1990) (quoting *Kwiat v. Doucette,* 81 B.R. 184, 188 (D.Mass.1987)).

■ The issue of whether a relationship is fiduciary in nature and within the narrow section 523(a)(4) definition is determined with reference to federal law. *In re Cochrane,* 124 F.3d at 984 (quoting *Lewis v. Scott,* 97 F.3d 1182, 1185 (9th Cir.1996)).

■ Federal courts construing this code section generally agree that the requisite

fiduciary capacity must arise from an express or technical trust created prior to the defalcation and without reference to it. *E.g., In re Cochrane,* 124 F.3d at 984 (quoting *Lewis v. Scott,* 97 F.3d 1182, 1185 (9th Cir.1996)). Moreover, merely labeling a relationship a "trust" is insufficient to create fiduciary capacity under the bankruptcy code. With reference to section 523(a)(4), the Eighth Circuit Court of Appeals has stated that "[i]t is the substance of a transaction, rather than the labels assigned by the parties, which determines whether there is a fiduciary relationship." *In re Long,* 774 F.2d at 878–79.

Several bankruptcy courts have considered whether an express trust created by an indemnity agreement gave rise to a fiduciary duty to a surety by an individual debtor. While not specifically addressing the nature of the relationship between the parties as *In re Long* instructs, these courts have uniformly held that a trust may arise within the confines of an indemnity agreement. *See e.g., Wright v. Gulf Ins. Co. (In re Wright),* 266 B.R. 848, 852 (Bankr.E.D.Ark.2001) (determining debt to surety was nondischargeable for defalcation based on express trust in indemnity agreement); *Cumberland Sur. Ins. Co. v. Smith (In re Smith),* 238 B.R. 664, 672 (Bankr.W.D.Ky.1999) (same); *Gillespi v. Jenkins (In re Jenkins),* 110 B.R. 74, 76–77 (Bankr.M.D.Fla.1990)(same). *See also Federal Ins. Co. v. Fifth Third Bank,* 867 F.2d 330 (6th Cir.1989) (holding, in non-bankruptcy context, that state's contract with general contractor created express trust on progress payments for job creditors).

This Court agrees with the reasoning of these cases and recognizes that the express trust in the indemnity agreement created a trust relationship between the parties. The Debtor, as a trustee of the funds, owed a fiduciary duty arising from

the trust, and he breached that duty through a defalcation. IBECX and the Debtor as a fiduciary agreed that the trust money would be used to pay expenses incurred on the Fairplay Road Project, and this agreement was violated when the money was diverted to pay expenses for another job. A failure to apply funds entrusted to a fiduciary in accordance with the terms of the trust is a defalcation, whether intentional or not. *Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane),* 124 F.3d 978, 984 (8th Cir.1997).

Therefore, since the Debtor violated his express trust by paying the money to debts incurred on another project, he committed a defalcation by a fiduciary within the meaning of 11 U.S.C. § 523(a)(4) and the debt to plaintiff is determined to be nondischargeable.

IT IS SO ORDERED.