NATIONAL SURETY CORPORATION v. ALLEN-CODELL CO. et al.

No. 307.

District Court, E. D. Kentucky.

Feb. 26, 1947.

190

See, also, 5 F.R.D. 3.

Leslie W. Morris and Marion Rider, both of Frankfort, Ky., and Booth and Booth and Percy N. Booth, all of Louisville, Ky., for plaintiff.

B. R. Jouett and D. L. Pendleton, both of Winchester, Ky., for defendants.

FORD, District Judge.

This case presents the question whether the surety upon bond of a contractor for public work, after completing the contract of the defaulting contractor, is entitled to recover from a subcontractor the cost of that part of the work covered by the subcontract which the subcontractor failed to perform.

On April 23, 1941, Robert Gwinn entered into a contract with the Department of Highways of the State of Kentucky to furnish and deliver all material and to do and perform all work required in the improvement of the Russell Springs-Columbia Road beginning at the corporate limit of Columbia in Adair County and extending a distance of approximately 13 miles to a a junction with Kentucky Highway No. 35 at Russell Springs in Russell County, in accordance with plans and specifications prepared by the Department of Highways. The contract provided: "This improvement to be Waterbound, Macadam Base, Bituminous Surfacing, Class C 1 type of construction 20 feet wide."

The contract further provided that "The work herein contracted for shall, in good faith, be commenced within ten days of the date of this contract and be completed not later than December 20, 1941." It also contained a provision stipulating that "Time is of the essence of this contract" and "the sum of ($30.00) Thirty Dollars per day is hereby agreed upon by the parties hereto as the liquidated damages for each and every day after the fixed date of completion for which the work hereby contracted for remains wholly or partly incompleted."

On the same date the contractor Robert Gwinn, together with the plaintiff, National Surety Corporation, as his surety, executed and delivered to the Department of Highways a bond in the sum of $167,470.75 for the faithful performance of the contract.

The defendant, Allen-Codell Company, entered into a subcontract with Gwinn by which it agreed to furnish the labor, materials and equipment necessary to complete the bituminous surfacing of the road in accordance with the specifications of the Department, at a stipulated price per gallon of the bituminous materials required. It provided for payments to the subcontractor for quantities as allowed in monthly estimates by the Department of Highways at the stipulated unit prices. It contained no express provision as to when the work of applying the bituminous surface should

be begun or be completed by the subcontractor, but it was understood, of course, that it was necessary for Gwinn to first complete the waterbound macadam base before the bituminous surface could be applied. Although time was not stipulated as of the essence of the subcontract, it is quite apparent from the testimony that the subcontract was made in full contemplation of the provisions of the contract between Gwinn and the Department in respect to the time for the completion and the consequence of delay. By implication of law, it was the duty of Gwinn to complete the waterbound macadam base for the application of the bituminous surface within a reasonable time after the work was commenced.

From the beginning Gwinn made little progress in constructing the base of the road. Prior to December 20, 1941, the stipulated date for completion, only a small portion of the base had been made ready for bituminous surfacing. The subcontractor promptly applied it according to agreement. Due to weather conditions, by authority of the Highway Department, operations on the project were suspended from December 1941 to April 20, 1942. Gwinn did not resume work on the project at the end of the suspension period but apparently abandoned it altogether. No further work was done toward the preparation of the base of the road for bituminous surfacing until late in the summer of 1942. On September 4, 1942, the defendant Allen-Codell Company received through the mail a letter purporting to be from Robert Gwinn advising that the road would be ready for application of a quantity of refined prime tar by approximately September 15, 1942.

Considering that it was no longer obligated upon its subcontract, the defendant declined to do anything more on the project. The work was finally completed in the summer of 1943 by another contractor employed by the plaintiff.

Relying upon its claimed rights under the doctrine of subrogation and also as assignee of Gwinn, the plaintiff seeks by this action to recover from the Allen-Codell Company, the subcontractor, the amount alleged to have been expended by plaintiff in completing the bituminous surfacing of the road in excess of what the cost would have been under the terms of the subcontract and also the amount of liquidated damages incurred to the state on account of delay.

Robert Gwinn was named as a party defendant but he was never brought before the court by summons or otherwise.

The fact that the plaintiff took from Robert Gwinn, the principal contractor, an assignment of his rights under his subcontract with the defendant seems to add nothing to the rights here asserted. Louisville Trust Co. v. Royal Indemnity Co., 230 Ky. 482, 20 S.W.2d 71.

Subrogation is a rule adopted by equity to compel the ultimate discharge of an obligation by a person who in equity and good conscience ought to pay it. As a general proposition, a surety who, under the requirement of his bond, completes the contract of a defaulting contractor may be subrogated to all the rights and remedies of the defaulting contractor against a third person who, by a subcontract, was obligated and wrongfully failed to perform some part of the work which the surety was required to complete, although no relation of contract or of privity existed between the surety and the subcontractor. In such a situation, however, the surety stands in no better position than the principal contractor through whom his right is derived. The rights and remedies to which the surety succeeds are taken subject to all defenses, limitations and disqualifications incident to them in the hands of the party to whom he is subrogated. As against the subcontractor, the surety is not subrogated to rights which may have originally existed in favor of the principal contractor but is limited to such rights as the principal contractor had against the subcontractor as of the time the contract was completed. In other words, the surety stands in the shoes of the principal contractor, with no better right or remedy. Phoenix Ins. Co. v. Erie Transportation Co., 117 U.S. 312, 321, 6 S.Ct. 750, 29 L.Ed. 873; Alexander v. Young, 10 Cir., 65 F.2d 752, 757; Globe & Rutgers Fire Ins. Co. v. Hines, 2 Cir., 273 F. 774, 775; 50 Am.Jur.

753, § 110. It follows, therefore, that in order to determine whether the plaintiff is entitled to recover against the defendant in this action, it must first be determined whether the principal contractor, Robert Gwinn, could have recovered against the defendant had he completed the work in question instead of the surety.

Upon his failure to resume performance of his contract on April 20, 1942, the Department of Highways, by telegram and by letter addressed to Gwinn at his home at Danville, Kentucky, called his attention to his default and urgently requested him to resume construction operations. Gwinn made no response to these communications and further indicated his intention to abandon the project by removing his machinery from the job and discharging his workmen. On May 20, 1942, the Highway Department notified the plaintiff of Gwinn's default and called upon it to take the necessary steps to complete the project in compliance with the terms of the contract and bond. The defendant sent Gwinn a statement showing $1927 due for the bituminous surfacing already applied and requested payment in accordance with the terms of the contract. Gwinn ignored this obligation. Thereafter Gwinn confirmed his intention to abandon his contract in a conversation with J. C. Codell, President of the defendant, Allen-Codell Company, in which he said that he had spent all he had on the job and was broke and further said: "My equipment is shot and my nerves are shot; * * * I can't go on. I am just like a crazy man."

■ This conduct of Gwinn clearly showed his abandonment of his contract with the State and repudiation of his obligations under the subcontract. The defendant was justified in treating the subcontract as terminated and in refusing to perform it when later called upon after having become engaged in other work. Gwinn's failure to pay the defendant the amount due, his failure to resume operations at the expiration of the suspension period, his removal of his machinery and discharge of his employees from the job, his statement of his inability to complete the work, his delay of almost a year before pretending to have any substantial amount of the base of the road made ready to receive the bituminous surface together constituted a material breach of the subcontract with defendant and a complete defense to any claim which Gwinn might have asserted against the defendant on account of its refusal to proceed under the subcontract when belatedly called upon in September 1942. "No principle in the law of contracts is better settled than that the breach of an entire and indivisible contract in a material particular excuses further performance by the other party and precludes an action for damages on the unexecuted part of the contract." O'Bryan v. Mengel Co., 224 Ky. 284, 288, 6 S.W.2d 249, 251.

There are other considerations which demand attention in a case of this character.

■ Subrogation is not an absolute right but, being purely a creature of equity, its operation is necessarily governed by principles of equity. As in other cases in which equitable relief is sought, the court will weigh and balance the equities of the parties in the light of the facts and circumstances of the particular case and grant or withhold relief accordingly. Equitable relief may properly be withheld from one who is himself guilty of inexcusable neglect amounting to wrongful or inequitable conduct respecting the matter in litigation. One who through subrogation seeks relief against a third party must show a superior equity in himself. "His equity must be strong and his case clear." Commonwealth, for use of Coleman v. Farmers Deposit Bank, 264 Ky. 839, 844, 95 S.W.2d 793, 795; 50 Am.Jur. § 111, p. 754.

It is shown by the testimony that the defendant, in accordance with its subcontract, promptly applied the required bituminous surfacing to all that part of the road which was made ready to receive it within a reasonable time after the construction work was started. The defendant in no way caused or contributed to the dereliction of the principal contractor or of the plaintiff, as his surety, in their failure to construct the macadam base of the road within a reasonable time.

On the other hand, the plaintiff materially contributed to the prolonged delay

which resulted in its difficulties. After receiving the demand from the State Department in May 1942 to proceed with the work in compliance with the terms of its bond, on account of Gwinn's default, the plaintiff procrastinated for an unreasonable time before resumption of work. Even then, it left the work under the control of Gwinn whose inefficiency and incapacity to promptly carry on the work had been adequately demonstrated. Until the spring of the following year, it suffered and permitted Gwinn to continue his persistent delay. The delay which thus ensued was attributable to the plaintiff as well as to Gwinn.

During the entire year of 1942 plaintiff sought to cover up its position in the matter by permitting Gwinn to occupy such a position as to enable him to hold himself out as the responsible contractor on the job when in fact his position as contractor had been renounced and terminated by the State Highway Department; he had been completely divested of all rights to payments accruing from the State and was reduced to the status of a mere employee on a monthly salary. Plaintiff put off the employment of an experienced construction contractor, capable of completing the job, until the spring of 1943, a delay of approximately a year after it had been notified by the Highway Department to proceed with the work in accordance with its bond. Such deliberate delay of plaintiff was not only inexcusable neglect but it constituted flagrant breach of duty.

A justifiable claim by the plaintiff to a superior equity in respect to the delay involved is obviously precluded by its conduct in contributing to and participating in that delay.

It is a fundamental principle of Equity Jurisprudence that a court of equity will not lend its aid to enable one to take advantage of his own wrong. When a party, seeking to set judicial machinery in motion in his own behalf, is shown to have breached a material contractual duty or to have been guilty of bad faith or inequitable conduct in the transaction in question, then the doors of the court will be shut against him; the court will refuse to interfere on his behalf or to award him any remedy.

For the reasons stated, the claim of the plaintiff should be and is denied.