ACUITY, A MUTUAL INSURANCE COMPANY Plaintiff

v.

PLANTERS BANK, INC. Defendant

No. CIV.A. 3:03CV–367–H.

United States District Court,
W.D. Kentucky,
at Louisville.

March 28, 2005.

Thomas E. Crafton, Keith D. Heath, Alber Crafton, Louisville, KY, Clifford E. Yuknis, Lawrence R. Moelmann, Michael J. Leech, Hinshaw & Culbertson, Chicago, IL, for Plaintiff.

Janet P. Jakubowicz, Elisabeth S. Gray, James W. Herr, Greenebaum Doll & McDonald, Louisville, KY, for Defendant.

Roberta S. Dunlap, Trustee in Bankruptcy, Dunlap & Nesmith LLC, Evansville, IN, for Star Construction, Inc. Third Party Defendant.

### MEMORANDUM OPINION

HEYBURN, Chief Judge.

This dispute arises because a contractor, Star Construction, Inc. ("Star"), defaulted on both its construction contract with the Commonwealth of Kentucky (the "Commonwealth") and its loan repayment with Planters Bank (the "Bank"). The contractor's surety, Acuity, claims the right to contract funds that the Bank had set off

from Star's account. To resolve the conflict between the surety's rights in subrogation and the bank's rights as creditor, the Court must clarify: (1) the precise extent of a subrogee's rights and the bank creditor's rights; (2) the ownership of progress payments deposited in the contractor's account; and (3) whether any legal or equitable theory allows the surety to pursue the contract funds now held by a third party.

The Court's duty is to clarify and untangle the interaction of various long-standing principles and, ultimately, to predict how Kentucky courts would apply that law to our circumstances. *Davis v. Ford,* 244 F.supp.2d 784 (W.D.Ky.2003); *Dinsmore Instrument Co. v. Bombardier, Inc.,* 199 F.3d 318, 320 (6th Cir.1999). In doing so, it has the benefit of excellent argument by very knowledgeable counsel on each side.

## I.

The setting for the current dispute arose as follows. Star had a longstanding business relationship with Acuity. In July, 1999, the two had entered into a General Indemnity Agreement that governed the terms under which Acuity, a Mutual Insurance Company, would issue surety bonds. In March, 2001, the Commonwealth contracted with Star for work on a public construction project at Western Kentucky University (the "WKU contract"). Pursuant to a contract requirement, Acuity provided payment and performance bonds for Star guaranteeing its completion of the WKU contract.

In 2002, Star obtained a line of credit with Planters Bank. As a condition of the credit, Star kept its general business accounts with the Bank and allowed the Bank to set off funds from that account in the event of a default. Ultimately, Star drew on that line of credit to the extent of

approximately $1,700,000 for its general business operations. For reasons apparently unrelated to the current dispute, Star's business deteriorated. In early 2003, Star was unable to make scheduled interest payments and fell into default on its line of credit.

The default alerted the Bank to Star's financial problems. The Bank monitored Star's bank account. Within a day after Star deposited a WKU contract progress payment of $410,602.34 in its account, the Bank seized those funds to reduce Star's debt. Several months later, Star's financial condition deteriorated such that it could not complete the WKU job. Eventually, the Commonwealth declared Star in default and called upon Acuity to complete the WKU contract. Acuity did so and completed all its obligations under its payment and performance bonds. One of those obligations was to pay Star's subcontractors for work performed and billed, but which was unpaid.

After learning of the Bank's setoff, Acuity filed this lawsuit to assert its rights in subrogation to the funds that the Bank had taken from Star's account. The Bank has moved for summary judgment on the grounds that it had a legal right to take funds from Star's corporate bank account and that no special trust provisions covered the funds. Soon afterwards, Acuity moved for leave to amend its complaint and responded that Star had indeed held the construction funds in trust and that the Bank surely knew it.[1]

## II.

Acuity primarily asserts rights in subrogation. The first step in the Court's analysis is to describe as nearly as possible the extent of those rights.

---

1. In this Memorandum Opinion, the Court considers all possible claims set forth in either the original complaint or the proposed amended complaint.

Subrogation is a "creature of equity" common in the construction industry. *See Louisville Trust Co. v. Royal Indemnity Co.*, 230 Ky. 482, 20 S.W.2d 71 (1929). Some time ago, Chief Judge Hiram Church Ford in the Eastern District of Kentucky set out its principles that remain valid today. *National Surety Corporation v. Allen–Codell Co.*, 70 F.Supp. 189, 191–192 (E.D.Ky.1947). Subrogation allows an equitable adjustment among parties where one performs another's obligation. A surety is subrogated to the rights of another when it performs on a construction bond and fulfills the obligations of its principal. In our case, a surety, such as Acuity, who performs the obligations of its bonds, may be subrogated to all the rights and remedies of a contractor in default, such as Star; the owner, such as the Commonwealth; or even subcontractors whom it pays. *Id.*

The principles of equity govern the specific remedies available under subrogation. The rights and remedies of the subrogee-the surety-are never greater than those of its subrogor-the contractor-and, in fact, are subject to any pre-existing defenses and limitations. As a general proposition, therefore, the surety that performs a contract, acquires all the contractor's rights under that construction contract. The most significant one is the right to receive all construction draws due for work already performed or that will be performed in the future. As grounds to recover funds due the contractor, some courts have termed the surety's interest an equitable lien on all funds due. *See, e.g., Prairie State Bank v. United States*, 164 U.S. 227, 229, 32 Ct.Cl. 614, 17 S.Ct. 142, 41 L.Ed. 412 (1896); *In re Cummins Const. Corporation*, 81 F.Supp. 193 (D.Md. 1948). Under *Prairie State* and its progeny, it is beyond dispute that Acuity has a right to funds due under the WKU contract. Moreover, the security interest or retainage in a construction contract is reserved for the surety who completes the job. The surety's special equitable right to contract proceeds encourages performance on construction bonds. This preference in equity raises sureties above other creditors in a bankruptcy proceeding. *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 134–135, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962).

The surety's right to contract funds arises at the time the bond is issued. However, its rights are said to be incomplete, inchoate and unenforceable until the surety suffers a loss on the bond by either performing or making a payment to subcontractors. *Prairie State*, 164 U.S. at 232, 237, 240, 17 S.Ct. 142. So long as the owner holds funds due for work performed, the surety standing in the shoes of the contractor has a priority to those funds. When a surety pays subcontractors and materialmen for work completed, it also becomes subrogated to their rights against others for payment. *Pearlman*, 371 U.S. 132, 83 S.Ct. 232.

### III.

Some general rules of banking law also apply in these circumstances. First, in the event of a default, a bank may set off the funds of its debtor from funds maintained in the debtor's name at the bank. *Ferguson Enterprises, Inc. v. Main Supply, Inc.*, 868 S.W.2d 98, 99 (Ky.App. 1993). Here, no one denies that the Bank loaned money on the condition that Star maintain its general business account with the Bank and that Star authorized the Bank to set off funds from its account in the event of default. Neither does Star dispute the default or its agreement that the Bank may take funds from Star's account.

A second general rule of banking law amounts to a broad exception to the first. A bank may not apply a deposit,

consisting of trust funds or funds belonging to one other than the depositor, to the individual indebtedness of the depositor if "it knows, or can properly be charged with knowledge of, the trust character or true ownership of the funds." *AMJUR BANK* § 887; *National Bank of Owenton v. Greene at al.,* 114 S.W. 322, 323 (Ky.1908); *See also Mitchell v. First National Bank,* 203 Ky. 770, 263 S.W. 15 (Ky.1924)(a bank paying out deposit of check made payable to one as agent on individual account is liable to principal). Courts have applied this rule in a variety of circumstances: to funds received by the debtor in its capacity as executor, administrator, trustee, agent, guardian, curator, or various other types of fiduciaries or representatives. *Id.*

Kentucky courts have applied these principles and sometimes struggled to articulate them since the turn of the last century. In *First National Bank of Owenton v. Greene et al.,* the Court of Appeals of Kentucky held that "where a check for a ward's share of an estate was payable to both the ward and the guardian, and the bank where it was deposited knew that the money was the ward's" the bank will be held liable for applying the proceeds of the check to pay the debt due from the guardian individually. (Not reported in Ky. Reports), 114 S.W. 322, 323 (Ky.1908); *see also Fidelity & Deposit Co. of Maryland v. Commonwealth,* 249 Ky. 170, 60 S.W.2d 345 (1933); *Farmers' & Traders' Bank v. Fidelity & Deposit Co. of Maryland,* 108 Ky. 384, 56 S.W. 671 (1900); *Hill v. Flemming,* 128 Ky. 201, 107 S.W. 764 (Ky.1908); *Bank One, Pikeville v. Commonwealth,* 901 S.W.2d 52, 54–55 (Ky.App.1995) (finding that an escrow agreement transfers title and interest of

the funds).[2] In each of these cases, the Kentucky Court of Appeals found an exception to the setoff rule where title or interest in the funds was held for or in the name of a third party. In our case, this means that an evidentiary and legal defense to a bank's setoff is that (1) the funds actually belong to or were held for the benefit of a third party, not the debtor and (2) the bank knew the true character of the funds.

## IV.

Acuity's theory of recovery evolves from the above exception. Acuity argues that Star held the funds in question in trust for the benefit of its subcontractors on the WKU project and that the Bank either knew or should have known this. In other words, Acuity maintains that the funds did not belong to Star, so the Bank had no right to take them to repay Star's debt. Thus, the precise legal or equitable ownership of the funds in Star's bank account at the time of the setoff will be a deciding factor in this case. Acuity advances several theories why the contract progress payments retain a special character that makes the Bank's setoff voidable. After much study, the Court finds these theories either out of step with Kentucky law or inapplicable to our circumstances.

At the outset, the Court notes that in some jurisdictions, the state legislature have assured that where a general contractor receives payment for work provided by laborers, subcontractors and materialmen, it becomes a statutory trustee of the payments received for the benefit of those persons. *See, e.g., Blair v. Trafco Products, Inc.,* 142 Mich.App. 349, 369 N.W.2d

---

**2.** In *Bank One,* the Kentucky Court of Appeals quoted approvingly a Florida court as the most succinct statement of the rule, "The depositor's creditor [in our case the Bank] is not entitled to the money if it is actually owned by somebody else. Instead, the somebody else is." *Bank One, Pikeville, Ky. v. Comm.,* 901 S.W.2d at 55 (quoting *Ginsberg v. Goldstein,* 404 So.2d 1098, 1099 (Fla.Dist.Ct. App.1981)).

900 (1985); *Utica Sheet Metal Corp. v. JE Schecter Corp.*, 53 Misc.2d 284, 278 N.Y.S.2d 345 (N.Y.Sup.1967). Kentucky law does provide protections for subcontractors on both public and private jobs. For instance, all contractors on public work must post performance and payment bonds to protect subcontractors and materialmen. KRS §§ 45A.190; 45A.435. The Kentucky statutes do not evidence a policy of greater protection, however. None of the statutes use the word "trust" or the word "fund." *Id.* The Court's thorough review of those statutes reveals that the Kentucky legislature has not chosen to create a statutory trust for construction contract progress payments.

Often, parties to a construction contract create an express trust as to specific contract funds. The Court finds a classic example of such a trust in *Federal Insurance Co. v. Fifth Third Bank*, 867 F.2d 330 (6th Cir.1989).[3] There, the construction contract provided that the State of Ohio as settlor would pass construction draws to the contractor as trustee. Acuity does not seem to seriously advance the argument that the WKU Contract created such a trust and for good reason. The WKU contract contains no language that classifies the Commonwealth's progress payments as payments "in trust" for the benefit of the subcontractors. Though the WKU Contract does obligate Star to pay its subcontractors from each construction draw, the language falls far short of an "express intent to create a trust." Moreover, the Commonwealth took no independent action to create either an express trust or some sort of joint ownership in the funds. It paid each construction draw directly to Star and in Star's own name. Thus, the Court finds that neither ·the WKU contract nor the Commonwealth's actions evidence any intent whatsoever to impress a trust or other special legal character upon the contract funds.

■  By necessity, therefore, Acuity focuses attention on its 1999 General Indemnity Agreement. That agreement remained in effect in 2003 when these events took place. The specific relevant General Indemnity provision provides:

If any of the Bonds are executed in connection with a contract which by its terms or by law prohibits the assignment of the contract price, or any part thereof, the Contractor and Indemnitors covenant and agree that all payments received for or on account of said contract shall be held as a trust fund in which the Surety has an interest, for the payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the prosecution of the work provided in said contract or any authorized extension thereof; and, further, it is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the Contractor or Indemnitors or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said Bonds, which said trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any said Bonds, and this Agreement and declaration shall also constitute notice of such trust. (General Indemnity Agreement, page 2).

Acuity contends that this provision creates an express trust that governed all payments on future bonded construction projects, such as the WKU contract. The

---

3. Though *Federal Insurance* interprets Ohio law, the requirements for an express trust in both Kentucky and Ohio are substantially the same.

Court must test this contention under the requirements of Kentucky law.

■ The four requisite elements of an express trust under Kentucky law are: (1) an express intent to create a trust; (2) an ascertainable *res;* (3) a sufficiently certain beneficiary; and (4) a trustee who owns and administers the *res* for the benefit of another (the beneficiary). *In re: Smith,* 238 B.R. 664, 670 (Bankr.W.D.Ky.1999); *see also Frazier v. Hudson,* 279 Ky. 334, 130 S.W.2d 809, 810 (1939). The General Indemnity Agreement does evidence Star's original intent to create a trust. Moreover, the beneficiaries seem sufficiently certain. These limited findings, however, leave Acuity a long way from establishing that specific contract funds were held in trust.

■ The Bank argues that Star cannot act both as settlor and as trustee of the supposed trust. That is not necessarily so. Under Kentucky law, a settlor of a trust may also act as its trustee. To do so, however, the settlor must manifest an intent that particular funds be held in trust. *See Cruse v. Leary,* 727 S.W.2d 408 (Ky. App.1987)(same person can be the settlor and the trustee of a trust); *Stouse v. First Nat. Bk. Of Chicago,* 245 S.W.2d 914 (Ky. 1951)(same). One cannot contribute a trust asset as settlor of that trust until one actually owns that asset. To avoid the awkwardness of defining when one person is acting as a settlor of a trust and when the same person acts as that trust's trustee, this kind of trust is sometimes called a trust by declaration. Star as settlor and trustee must take some action to create a trust by declaration. *Dawson v. Dawson's Adm'x,* 272 S.W.2d 666, 668 (Ky.1954). To agree to do so at some future time, unaccompanied by later action or evidence of intent to create a trust, is not enough. *REST 2d Trusts* §§ 17, 26. Thus, Star's promise made in 1999 alone cannot impress a trust on funds received free of encumbrance in 2003.

■ There are sound reasons why most jurisdictions impose such strict requirements for creating a trust. *See Compton v. Compton,* 435 S.W.2d 76 (Ky. 1968). The court in *Compton* discussed the fear that a person would be made a trustee by witnesses after his death. The strict requirements of trust creation were to avoid this sort of injustice. More broadly, the requirements of trust creation serve to delineate trustees from unencumbered owners of property. As Star attempts here, a corporation may not operate as an absolute owner but claim a trust in hindsight. The strict requirements of trust creation are particularly important where, as here, one entity does try to act as both settlor and trustee. A corollary to this rule favoring strict construction is that where a trust may have been formally, legally created but the trustee is in actuality an absolute owner, the trust will be defeated. *Alexander v. Hicks,* 488 S.W.2d 336, 338 (Ky.1972)(recognizing the principle that "unbridled discretion in a trustee is incompatible with the essential nature of a trust").

■ A problem related to the requirement of a declaration is that a trust cannot exist without a trust corpus. *See, e.g., In re Construction Alternatives, Inc.,* 2 F.3d 670, 676 (6th Cir.1993)(Ohio). As the Kentucky Court of Appeals said in *Deleuil's Ex'rs et al. v. Deleuil,* 255 Ky. 406, 74 S.W.2d 474, 476 (1934), even where the intent to create a trust is "clear and unmistakable," the trust "would be incomplete unless executed and effectuated" by bringing property within the trust. Under Kentucky law, to merely identify a future trust asset or *res* does not create a trust corpus. The Court of Appeals explained that "the property must then have been in existence and its identity definite so that it

could be ascertained as to just what was set aside. The donor could not create a trust in property which he intended in the future to purchase and put in the box." *Id.* at 477.

As the Kentucky Court of Appeals reiterated a few years after *Deleuil,* "To satisfy the requirements for determining that a trust has been created, the subject matter of the trust must be definite or definitely ascertainable from facts existing at the time of the creation of the trust." *Ridley v. Shepard,* 293 Ky. 91, 168 S.W.2d 550, 552 (1943)(citing *Restatement (First) of Trusts* § 76). Star's expression of intent to place in trust certain assets that did not yet exist and over which it held no right, title or interest, has no legal effect as to the WKU contract funds. Star was without an actual ownership interest in those funds until it received those funds from the Commonwealth or, at the least, until it performed work entitling it to payment. Thus, none of its actions prior to receiving the funds could effectuate the trust.

Acuity argues strenuously that as in *Federal Insurance Co. v. Fifth Third Bank,* the ascertainable *res* is the progress payment, and that the trust beneficiaries are both the surety and the subcontractors. Vast and material differences separate *Federal Insurance* from our case, however. In *Federal Insurance,* the court encountered a classic trust where the state as settlor passed the contract funds in trust to the contractor as trustee for the

benefit of subcontractors. By doing so, the parties avoided all of the difficulties Acuity now faces. Unlike the circumstances in *Federal Insurance,* the WKU contract neither created a trust nor required that contract draws be paid in trust. Thus, unlike the construction funds in *Federal Insurance,* those in the WKU contract were not impressed by a trust upon payment to Star. Consequently, *Federal Insurance* provides absolutely no support for the relief that Acuity requests in our circumstances.

From the foregoing discussion the Court concludes that Acuity's trust theory fails due to the absence of a coincidence between the existence of a trust *res* and a declaration of intent. The boilerplate language of the General Indemnity Agreement alone is an insufficient basis to create a trust. Star did not keep the progress payments in a separate trust account. It neither deposited the progress payment with special instructions nor requested payment as trustee for the alleged beneficiaries. Star did nothing, other than promise Acuity to create a future trust. Under Kentucky law, this is an insufficient basis to impose a trust upon funds received some three years later.[4] To find otherwise would accord Star limited rights to funds in hindsight when in reality it had unfettered use of them.

**V.**

Acuity also argues that even if the funds were not held in trust, it has an

---

4. Two examples suggest the need for more action than a mere promise of future action. The Restatement of Trusts (2d) provides the following example: If A tells B that if and when A receives funds he will hold the funds in trust for C and A receives the funds but makes no further manifestation of an intention to be trustee, A is not trustee of the funds *RST (2d) Trusts § 26 Comment J (1959);* In *Gins v. Gins* (Ky.1930) the Kentucky Court of Appeals considered whether someone had created a trust. The Court said that "the

mere expression of a wish to give, unaccompanied by acts sufficient to execute the purpose, will not be enforced." While Kentucky Courts have not applied § 26 of the Restatement 2d of Trusts, Kentucky courts have applied other sections of the Restatement 2d of Trusts in *Compton v. Compton,* 435 S.W.2d at 78 and *Hurst v. First Kentucky Trust Co.* 560 S.W.2d 819, 820 (Ky.1978) indicating a willingness to apply the *RST 2d* in this area of law.

equitable interest in the funds because, as surety, it is entitled to receive contract funds due for work its principals have performed. It is true that a surety subrogated to the contractor's rights is entitled to funds held as security on performance of the contract (retainage) where the surety acquired that equitable lien prior to the bank, though the surety seeks enforcement later. This general rule does not provide a basis for Acuity retaining the contract funds in these circumstances.

The Supreme Court explained this rule in *Prairie State Nat'l Bank of Chicago v. United States v. Hitchcock et al.*, 164 U.S. 227, 32 Ct.Cl. 614, 17 S.Ct. 142, 41 L.Ed. 412 (1896) where the performing surety prevailed over a bank that had acquired a lien on a contractor's final payment subsequent to the issuance of the bond on the same construction contract. The Court further stated that "[s]ureties and guarantors are not to be made liable beyond the express terms of their engagements." 164 U.S. at 239, 17 S.Ct. 142. In *Prairie State*, the retainage was security for performance of the construction contract and was thus due the surety Hitchcock who bonded the same contract. The surety's favored position in equity flows from this concern expressed in *Prairie State* and its progeny, namely that the surety get the benefit of the contract proceeds for which it bargained. To find otherwise would alter the terms of the agreement between the project owner, the United States, and its contractor. This would in turn release the surety from its obligation under its suretyship agreement with the contractor.

■■■■■ The doctrine of equitable subrogation allows the surety to take whatever rights to contract proceeds the contractor, the project owner, and the subcontractors hold. Only a surety who

fully performs on a payment or performance bond may enforce this equitable interest and only then against unpaid funds or those retained as a security on a construction contract. In *Pearlman*, 371 U.S. 132, 83 S.Ct. 232, the Supreme Court established the surety's right to subrogation to a subcontractor's claims. A surety who has paid subcontractors has a right to receive remaining contract proceeds based upon an "equitable interest." The equitable interest attaches to sureties like Acuity to encourage performance on their bonds, and the retainage or final payment in a construction contract acts as a security for both the owner and the surety.

By virtue of their performance of Star's contracts, Acuity occupies this equitably favored position in our case. Acuity is not, however, entitled to the funds in question. A case from our own district readily illustrates this result. *Maryland Casualty Co. v. Lincoln Bank & Trust Co.*, 18 F.Supp. 375 (W.D.Ky.1937) involves circumstances like ours except that the contractor consented to apply a particular construction contract payment to an outstanding bank loan, rather than the bank setting off the funds from an account.[5] Judge Hamilton of the Western District of Kentucky considered the *Prairie State* line of cases noting,

> [w]here payments are made to a public contractor unconditionally, he can use the money so paid in any way he desires. Such payments are not subject to an equitable lien, nor does the right of subrogation inhere to a surety of the payee.

*Id.* at 377. In *Maryland Casualty*, the contract funds at issue were those that the owner paid to a contractor prior to the contractor's default. In our case as in

---

**5.** Even in our case, the bank obtained proper and binding prior consent to setoff account

funds in the event of default.

*Maryland Casualty,* the funds at issue are already paid, not retained contract proceeds. Thus, Judge Hamilton contrasts *Prairie State* which concerned an equitable lien on retained contract funds. *Id.* at 378. Equity treats the two differently because the surety's right to the funds rests squarely on the contractor's actions.

Acuity as the surety on the WKU contract has a specific right in equity to all due and unpaid contract proceeds. Acuity also has a contractual right as a surety to Star's assets up to the point of full reimbursement. Plaintiff argues that funds paid without condition to Star and setoff by the Bank remain contract proceeds of the sort awarded sureties under the doctrine of equitable subrogation. The Court disagrees. As *Maryland Casualty* and *Prairie State* make clear, Acuity has an equitable interest in unpaid contract proceeds. Star could not circumvent that interest by assigning its right to receivables to a party other than Acuity. Acuity does not have an equitable right to contract proceeds due and paid its principal once its principal had allowed those funds to be used to pay another debt.

## VI.

■■■ Lastly, Acuity argues that the circumstances here create an equitable lien in favor of the subcontractors as to WKU contract funds. Acuity bases this argument on the Bank's knowledge of (1) the supposed custom and practice of the construction industry to hold contract funds in trust, and (2) the intended use and purpose of the funds. Acuity cites an Illinois case at length holding that principles of equity and justice impress a trust on funds deposited to the contractor's account for payment to subcontractors. *See In re Tonyan Construction Company,* 28 B.R. 714, 724–26 (Bkrtcy.N.D.Ill.1983). Acuity argues that the Bank's right to setoff was subject to the interests of the subcontractors in the funds. Even if the Court were to accept these two propositions, it finds no legal theory under Kentucky law or statute that supports Acuity's recovery. Under Kentucky law, any claim of equitable subrogation against the Bank's rights must be premised upon a trust as to the funds in question.

First, the Court finds no support for the argument that either the "custom and practice" of an industry or their "unique status" as contract funds, by itself, can create a trust upon those funds. If indeed such a custom or practice exists, the Commonwealth and Star evidently neglected to follow it. If such a trust is to be created, the parties must do it by their contract and their actions. To be sure, the subcontractors had a right to payment from Star and Acuity is subrogated to that right. However, the right to payment is a far different matter from having a legal, equitable or beneficial interest in specific funds.

Second, the Bank's mere knowledge that Star intended to pay the funds to its subcontractors is quite irrelevant to the issue of whether Star held the funds in trust. Of course, that knowledge is precisely the reason it took the funds. Even if the Bank had inquired further, it would have discovered that Star had received funds in a corporate capacity and had not taken action to place those funds in trust. Acuity retains the right to collect on its indemnity agreement against Star and its individual indemnitors, but not from the Bank. This is not a case where the bank colluded with the principal to defraud the intended beneficiary in an effort to collect on a personal debt. *See Farmers' & Traders' Bank v. Fidelity & Deposit Co. Of Maryland,* 108 Ky. 384, 56 S.W. 671 (1900). In such a case, equity would allow the surety to bring a wrongful setoff action on the theory of constructive trust. A constructive trust is a remedy imposed to right wrongdoing. Nor is this a case where the bank

received funds on an individual debt impressed with a trust in favor of a third party. *See Hill v. Flemming,* 128 Ky. 201, 107 S.W. 764, 766 (1908). Indeed, the Court has found that these funds were not held in trust. Consequently, here the Court finds no damage to the surety in equity.

### VII.

From the foregoing, the Court concludes as follows. The Bank validly set off the contract funds in Star's account. Those funds were not subject to a trust created either by the WKU contract or the Indemnity Agreement, or by acts of the Commonwealth and Star. Most important, Star evidenced no intent to place these specific funds in trust. Neither Star nor its subcontractors have valid rights of action against the Bank to which Acuity is subrogated. The circumstances here do not create a special equitable lien or interest that Acuity can assert in subrogation to recover funds paid to its principal.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

The Defendant has moved to dismiss all claims in this case. The Court has carefully considered the issues in an accompanying Memorandum Opinion. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is SUSTAINED and Plaintiff's claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's motion to amend its original complaint is DENIED as futile pursuant to Fed.R.Civ.P. 15.

This is a final and appealable order.