NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0815n.06

No. 12-6424

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| In re: DEWAYNE ANTHONY POYNTER, | ) | **FILED** |
|  | ) | Sep 06, 2013 |
| Debtor, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| DEWAYNE ANTHONY POYNTER, | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR |
| Appellant, | ) | THE WESTERN DISTRICT OF |
|  | ) | KENTUCKY |
| v. | ) |  |
|  | ) |  |
| GREAT AMERICAN INSURANCE | ) | OPINION |
| COMPANY, |  |  |
|  |  |  |
| Appellee. |  |  |

Before: COLE and DONALD, Circuit Judges; MARBLEY, District Judge[*]

**Bernice B. Donald, Circuit Judge.** Great American Insurance Company provided payment and performance bond insurance to Poynter Construction, as part of Poynter Construction's insurance requirement to bid for public contracts. Poynter Construction failed to complete three bonded projects and Great American was forced to pay for the projects' completion. Dewayne Poynter, the sole proprietor of Poynter Construction, sought relief under Chapter 7 of the Bankruptcy Code, seeking discharge of his debts to Great American. Great American filed a motion for summary judgment, arguing that the debts were non-dischargeable under 11 U.S.C. § 523(a)(4).

---

[*]The Honorable Algenon L. Marbley, United States District Judge for Southern District of Ohio, sitting by designation.

The bankruptcy court granted Great American's motion and the district court affirmed. Poynter now appeals.

**I.**

The debtor, Dewayne Poynter, was the sole proprietor of Poynter Construction, a commercial construction company. (Bkr. Doc. 12-1, P. 6.) In order to qualify for and enter into contracts with local and state governments as a builder for public projects, Poynter was required to obtain payment and performance bonds. (Bkr. Doc. 12-1, P. 16-17.) For this reason, Great American Insurance Company (GAIC) provided Poynter Construction (personally guaranteed by Poynter) performance and payment bonds on public projects. (*Id.*) On June 1, 2007, Poynter and GAIC entered into an Agreement of Indemnity (AOI). (Bkr. Doc. 12-1, P. 15-16,) Thereafter, GAIC and Poynter Construction entered into several performance bonds and GAIC required Poynter Construction to be capitalized in certain amounts for each construction project before issuing the bonds. (Bkr. Doc. 12-1, P. 16-17.) GAIC relied on misleading financial statements provided by Poynter Construction in agreeing to write bonds for the project. (Bkr. Doc. 12-2, P. 45-46.)

Poynter Construction was unable to complete three construction projects. (Bkr. Doc. 12-1, P. 24; Doc. 12-1, P. 32; Doc. 12-2, P. 3.) GAIC paid to have the projects completed and incurred a net loss of $600,210.01. (GAIC's Mot. Summ. J. Doc. 11-1, P. 7.) Poynter Construction's records indicate that it received $2,502,209 in payments for the three bonded projects that it did not complete. (Bkr. Doc. 12-12, P. 1.) Of this amount, $1,351,788.39 was paid to Poynter Homes, a

residential construction company that Poynter owned and operated, and PBI Bank. (GAIC's Mot.

Summ. J. Doc. 11-1, P. 7.)

On October 22, 2010, Poynter filed a Voluntary Petition seeking relief under Chapter 7 of

the United States Bankruptcy Code. On January 18, 2011, GAIC instituted a proceeding against

Poynter in order to have its debt declared non-dischargeable under 11 U.S.C. § 523(a)(4). GAIC

filed a motion for summary judgment and argued that Poynter's debt to GAIC was non-dischargeable

because he failed to hold payment of bonded contract funds in trust in accordance with the terms of

the trust funds provision in the AOI that states:

TRUST FUNDS

Fourth: Undersigned covenant and agree that all funds received by them, or due or
to become due under any contract covered by any Bond are trust funds whether in the
possession of the Undersigned or another, for the benefit of all parties to whom the
Undersigned incurs obligations in the performance of the contract covered by the
Bond(s) and/or the benefit of, payment to or reimbursement of the Surety for any
liability, loss or expense the Surety may incur under the Bond(s) or in enforcing this
Agreement. If the Surety discharges any such obligation, the Surety shall be entitled
to assert the claims of any party to the trust funds. The Undersigned shall, upon
demand of the Surety and in implementation of the trust, open an account or separate
accounts with a bank designated by Surety, which account(s) shall be designated as
a trust account(s) for the deposit of such trust funds and the Undersigned shall
deposit therein all monies received pursuant to said contract. Withdrawals from such
account(s) shall be by check or other instrument signed by the Undersigned and
countersigned by a representative of the Surety. Notwithstanding anything to the
contrary herein above this dedication may be implemented in any other manner
provided at law or in equity.

(Bkr. Doc. 12-4, P. 2-3.)

The bankruptcy court granted GAIC's motion for summary judgment.  The district court affirmed the bankruptcy court's decision and Poynter now appeals.

**II.**

"In considering an appeal from a district court decision which is on appeal from a bankruptcy court, this court independently reviews the bankruptcy court's findings of fact for clear error." *In re Garver*, 116 F.3d 176, 178 (6th Cir. 1997).  Conclusions of law are reviewed *de novo*. *Id.*

The applicability of the Bankruptcy Act's discharge exception regarding defalcation is at issue here.  A debtor may not discharge any debt that was incurred under "fraud or defalcation while acting in fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523 (a)(4).  GAIC did not argue in either the bankruptcy court or the district court that embezzlement, larceny, or fraud occurred in this case.  Moreover, the bankruptcy court and the district made no such finding.  Therefore, GAIC must show by a preponderance of the evidence that the debt was incurred through defalcation while acting in a fiduciary capacity. *In re Garver*, 116 F.3d at 178 (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)) (adopting preponderance of the evidence standard for § 523(a) discharges).

We construe the term "fiduciary capacity" found in the defalcation provision of § 523(a)(4) narrower than we construe the term "fiduciary relationship" in other contexts. *Id.* at 179-80.  Specifically, defalcation is "limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Id.* at 180 (citing *In re Young*,  91 F.3d at 1371). A fiduciary capacity under § 523(a)(4) is "limited to only those

situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Id.* at 180 (citing *In re Young*, 91 F.3d 1367, 1371 (10th Cir. 1996)). Therefore, GAIC must establish: "(1) the existence of a trust, either express or statutorily created; (2) the debtor owed a fiduciary obligation with relation to that trust; and (3) the debtor breached his or her fiduciary duty by either misappropriating the trust res or by simply failing, intentionally or unintentionally, to properly account for the trust res." *In re Smith*, 238 B.R. 664, 670 (Bankr. W.D. Ky. 1999).

## A. Existence of a trust

Poynter's first issue on appeal is that the bankruptcy court and the district court erred in finding that the AOI between Poynter Construction (and Poynter individually) and GAIC created an express trust. State law governs whether an express or technical trust exists. *Id.* Under Kentucky law, an express or technical trust is created by: "(1) an expressed intent to create a trust; (2) an ascertainable res; (3) a sufficiently certain beneficiary; and (4) [a] trustee who administers the trust for the beneficiary." *In re Grant*, 325 B.R. 728, 734 (Bankr. W.D. Ky. 2005) (citing *Cumberland Sur. Ins. Co. v. Smith*, 238 B.R. 664, 670-71 (Bankr. W.D. Ky. 1999)).

With regard to the first element, there must be a manifestation of an intent on the part of the alleged trustee to create it in favor of the alleged beneficiary to the particular funds involved. *Frazier v. Hudson*, 130 S.W.2d 809, 810 (Ky. Ct. App. 1939). Here, there is a contractual provision in the AOI which refers to Poynter Construction holding "in trust" any funds that it received from

any contract covered by the bond. Specifically, the provision requires "that all funds received by them [Poynter Construction & Poynter, individually], or due or to become due under any contract covered by any Bond are trust funds." (Doc. 1-1, Page 3.) In a somewhat similar case involving a dispute with offset payments under a construction contract, we found similar language in a general agreement of indemnity to be sufficient evidence of a manifestation of intent to create a trust. *See Fed. Ins. Co. v. Fifth Third Bank*, 867 F.2d 330, 332-34 (6th Cir. 1989) (holding that language "[a]ll monies paid on account to any contractor for materials or labor shall be regarded as fund [*sic*] in his trust for payment of any and all obligations relating to this contract" is a sufficient manifestation of an intent to create a trust). Other courts have also found similar language in indemnity agreements to be sufficient to satisfy the first element of express trust creation. *See Acuity v. Planters Bank, Inc.*, 362 F. Supp. 2d 885, 891-892 (W.D. Ky. 2005) (finding that language "all monies due and to become due under any contract or contracts covered by the Bonds are trust funds" to evince intent to create a trust)*; see also In re Smith*, 238 B.R. at 671 (finding "to hold all monies or other proceeds [of bonded construction contracts] . . . as a trust" to be sufficient). We find that the AOI provision in question expresses a clear intent to create a trust because the contractual language of the AOI at issue here is largely the same as the language used in other cases, including one of our own, where the first element was met.

In terms of the second element, "the subject matter of the trust must be definite or definitely ascertainable from facts existing at the time of the creation of the trust." *Ridley v. Shepard*, 168 S.W.2d 550, 551 (Ky. Ct. App. 1943). "[E]ven where the intent to create a trust is clear and

unmistakable, the trust would be incomplete unless executed and effectuated by bringing property within the trust." *Acuity*, 362 F. Supp. 2d at 892 (quoting *Deleuil Ex'rs v. DeLeuil*, 74 S.W.2d 474, 477 (Ky. Ct. App. 1934)). Poynter argues that a two-year time lapse between the execution of the AOI and the first bonded contract that Poynter Construction received makes the creation of a trust impossible. While Poynter does not make clear which element of trust creation he takes issue with, presumably it is the ability to ascertain the trust res at the time the trust was created. Poynter relies heavily on *Acuity* to support his argument. The court's issue in *Acuity*, however, was a subrogation rights dispute between a surety and a creditor bank. *Id.* at 888. Our issue   whether a sufficient fiduciary relationship existed under 11 U.S.C. § 523(a)(4) such that the debt was non-dischargeable   is entirely different. Nevertheless, *Acuity* is not irrelevant because it explains that under Kentucky law, a trust is not created by merely identifying a future trust res. *Id.* at 892. The *Acuity* court found that one of the contractors competing for superior rights in the funds was out of luck because it was "without an actual ownership interest in those funds until it received those funds [or] until it performed work entitling it to payment." *Id.* at 893. In other words, the subject matter of the trust was still too abstract. The difference here is that GAIC had a definite pecuniary and legal interest, at the time the agreement was signed, in the amount that it was agreeing to insure Poynter Construction. Although there was a time lapse, Poynter Construction (and Poynter individually) signed the AOI in consideration of GAIC's issuance of the payment and performance bonds. When the first contract was received, a payment and performance bond was issued by GAIC to Poynter Construction. We believe the issuance of the bonds and the acceptance of the bonds by Poynter Construction is sufficient to create a continuing obligation to abide by the trust provision in the AOI.

*See In re Smith*, 238 B.R. at 672. For this reason, we conclude that the ascertainable res is all funds received under any contract covered by the bond.

With respect to the third element, there is no dispute that there is a sufficiently certain beneficiary. The beneficiaries are "all parties to whom the Undersigned [Poynter Construction] incurs obligations in the performance of the contract." This provision establishes a sufficiently certain beneficiary. *Id.* at 673 (finding "job creditors" as being a sufficiently certain beneficiary).

Lastly, in regard to the designated trustee element, the AOI designates Poynter Construction. Poynter seems to argue that a trust was not formed because he had unlimited use of construction draws and was never required to segregate those funds from his other construction projects. We addressed this exact argument in *Federal Insurance* and determined that "this is not a determining factor of whether a trust was formed." 867 F.2d at 334. Moreover, "the requirement to hold the funds in a separate account is a fiduciary obligation of [Poynter Construction] as a trustee, and therefore, when a trust is formed, the trustee has this obligation regardless of the trust agreement wording." *Id.* As a result, we hold Poynter Construction (and Poynter individually) was the designated trustee and that an express trust was formed in accordance with the AOI trust fund provision.

**B. Defalcation**

Having determined that the AOI trust fund provision created an express trust and that Poynter owed fiduciary obligations to GAIC for these funds, we must answer the final inquiry of

whether Poynter breached his fiduciary duty and thus committed defalcation. "Defalcation [] occurs through the misappropriation or failure to properly account for [the] trust funds." *In re Garver*, 116 F.3d at 180. Poynter did not argue in either the bankruptcy court or the district court, nor does he argue here, that he did not misappropriate or fail to account for the trust funds. In fact, the opposite is true: Poynter indicates in his appellate brief that he did not segregate the funds from bonded construction contracts from funds received through other construction projects. Poynter's co-mingling of bond contract funds with other contract funds is a misappropriation of trust funds. *In re Smith*, 238 B.R. at 674. Therefore, we determine that Poynter breached his fiduciary duty by engaging in a defalcation while acting in a fiduciary capacity. *Id.*

## III.

We **AFFIRM** the district court's decision.